CATTON, NEILL & CO. (LTD.) *v.* UNITED STATES (No. 2130).[1]

EVIDENCE, SUFFICIENCY.

The testimony of a witness with considerable knowledge of sugar-drying machinery that he knew the machinery at bar to be used for this purpose and did not know of any other purpose for which it was used is sufficient to establish that such machinery is chiefly or exclusively used in this country in the manufacture of sugar and to fix its classification as such under paragraph 391, tariff act of 1913.

United States Court of Customs Appeals, March 31, 1922.

APPEAL from Board of United States General Appraisers, T. D. 38746 (G. A. 8442).

[Reversed.]

*Frank L. Lawrence* and *Thomas M. Lane* for appellants.
*William W. Hoppin,* Assistant Attorney General (*Samuel Isenschmid,* special attorney, of counsel), for the United States.

[Oral argument February 17, 1922, by Mr. Lane and Mr. Hoppin.]

Before SMITH, BARBER, and MARTIN, Associate Judges; DE VRIES, Presiding Judge, participating in the decision by agreement of counsel.

MARTIN, Judge, delivered the opinion of the court:

The merchandise covered by this appeal consisted of certain centrifugal machines which were imported at the port of Honolulu for use in the manufacture of sugar upon Hawaiian plantations.

The collector assessed duty upon the main parts of the machines at the rate of 20 per cent ad valorem under the general provision for manufactures of metal in paragraph 167 of the tariff act of 1913. Certain ball and roller bearings, however, were assessed at the rate of 35 per cent ad valorem, under the eo nomine provision for such articles in paragraph 106 of the act.

The importers protested against the assessment, claiming that the articles were knocked-down entireties, which were entitled to free entry as "machinery for use in the manufacture of sugar," under paragraph 391 of the act.

That paragraph reads as follows:

---

[1] T. D. 39084.

391. Agricultural implements: Plows, tooth and disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, threshing machines, cotton gins, machinery for use in manufacture of sugar, wagons and carts, and all other agricultural implements of any kind and description, whether specifically mentioned herein or not, whether in whole or in parts, including repair parts.

The protest was tried before the Board of General Appraisers and was overruled. The importers thereupon appealed.

At the trial the importers called and examined but a single witness, and the Government called none. Accordingly, the only evidence before the board consisted of the testimony submitted on behalf of the protest, and the question arose whether that was sufficient to establish a prima facie case in favor of the importers. The board ruled that the evidence fell short of that measure, and this appeal calls for a review of that decision.

It is agreed by the parties that the free-list provision for "machinery for use in the manufacture of sugar" covers or includes only such machinery as is in general use chiefly or exclusively in this country in the manufacture of sugar. See United States *v.* Boker (6 Ct. Cust. Appls. 243; T. D. 35472); United States *v.* American Express Co., (id. 494; T. D. 36124); Brown *v.* United States (7 id. 309; T. D. 36871); Richardson *v.* United States (8 id. 179; T. D. 37289), and cases cited. The controversy between the parties, therefore, resolves itself into a question concerning the force and effect which should be given to the testimony of the importers' witness in order to determine whether it was sufficient to overcome the presumption in support of the assessment, and establish a prima facie case in favor of the protestant.

The witness, Mr. Gartley, is vice president and manager of C. Brower & Co., sugar agents, and for the last 10 years has had charge of various sugar plantations and refineries in the Hawaiian Islands. He is also president of Catton, Neill & Co., of Honolulu, who have large machine shops there and manufacture sugar machinery of all kinds, acting also as agents for other manufactories of special articles of that kind. The witness described in detail the machinery now in question, stating that he had ordered it according to certain specifications for use as machinery in the manufacture of sugar, that it was in actual use as such, that it was peculiarly adapted to that use, and that in the Hawaiian Islands such machinery was used for no other purpose. The witness said that he had no knowledge of any other use for which the machines were adapted, adding, however, "There may be something for which they might be used, but I have no personal knowledge of such use." The witness said, however, that he had personal knowledge of the fact that the machines were incapable of use as cream separators or as laundry machinery.

The foregoing testimony stands uncontradicted in any manner, and it certainly tends very strongly to support the claim made by the importers. The Government, however, contends that it fails to establish a prima facie case when considered in the light of the following questions and answers which are found in the testimony of the witness:

Q. And there are centrifugal machines with top suspension that are used for purposes other than sugar?—A. Yes, sir.

Q. What would you say they are?—A. In chemical factories, I should imagine, drying chemicals, something of that kind. I am not personally acquainted with it at all. But they could not be used for a laundry machine, that I know.

Q. So far as your own personal knowledge goes, you would not be in a position to swear that most of the machines of the kind that you import were actually used in this country for sugar making?—A. No.

Q. You could not swear to that.—A. No.

\*       \*       \*       \*       \*       \*       \*

Q. I understand you to say, however—I want to get this straight—I understood you to say, however, that so far as your own personal knowledge went you would not be prepared to swear that the largest proportion of centrifugal machines of this kind were not usable for purposes in the United States—for purposes other than sugar making; suitable for use?—A. I could not swear to that.

The Government contends that the foregoing testimony is a confession of ignorance upon the part of the witness concerning the uses to which such machinery might be applied, since he could not say of his own personal knowledge that there was no other use in this country for the machines equal to their use in the manufacture of sugar.

We do not, however, take that view of the force and effect of the testimony. It is fair to believe that the witness was a business man of considerable experience with such machinery, and if there existed an equal or major use thereof other than in sugar making it is probable that he would have known of that fact. His lack of knowledge of such another use was therefore probative to the effect that there was no other such use. This view was expressed by this court, by Judge Smith, in Klipstein v. United States (1 Ct. Cust. Appls. 122, 124; T. D. 31120) in the following words:

That testimony was, it is true, negative in character as to whether the oil might not be put to some other use than that of dressing leather, but it was direct, affirmative, and positive, first, that it was used for dressing leather in order to give it the distinctive odor of Russia leather; second, that in all his years of experience with the oil the witness knew of no other use for it; and third, that it was imported by his firm to be sold and was sold exclusively to tanners and jobbers in tanning materials. The mere fact that the merchandise might possibly have some other use than that specified is not sufficient of and by itself to overcome or counterbalance the probative effect of the sworn declaration of a single witness of ten years' experience with the goods that they have but one use because he knows of but one use for them.—United States v. Wells (77 Fed. 411).

In this view of the case we conclude that the uncontradicted and unimpeached testimony of the only witness in the case was sufficient

to make out a prima facie case in support of the protest. We do not overlook the rule which favors the decision of the board upon the weight of the evidence in case of contradictory testimony, but in the present instance there is no conflict of evidence, the sole question being the interpretation proper to be placed upon testimony which is undisputed in any particular.

We conclude, therefore, that the testimony was sufficient to make out a prima facie case to the effect that the articles in question, including the ball and roller bearings, were entireties in a knocked-down condition, and were "machinery for use in the manufacture of sugar," thereby responding to the enumeration of such merchandise in paragraph 391 of the free list.

The decision of the board is accordingly reversed, and the case is remanded.

*Reversed.*