**No. 57033.**—Gracie & Sons v. United States, protest 178029–K (New York).

Rao, Judge: An importation of merchandise, invoiced as "Chinese Tea Chest Wall Paper," was classified by the collector of customs at the port of New York, as papers wholly or partly covered with metal or its solutions, and assessed with duty at the rate of 4½ cents per pound and 10 per centum ad valorem, pursuant to the provisions of paragraph 1405 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. Although it is conceded that the merchandise at bar is, in fact, metal-covered paper, the claim is here made that it is more properly provided for in paragraph

1409 of said act, as hanging paper, printed, lithographed, dyed, or colored, dutiable at the rate of 1 cent per pound and 10 per centum ad valorem, in accordance with the modification of said paragraph 1409 by the General Agreement on Tariffs and Trade, *supra*.

At the trial the only witness called was Charles D. Gracie, who testified on behalf of the plaintiff. He stated that he has been an active member of C. R. Gracie & Sons for a period of 14 years, but that the firm itself has been in business for about 50 years. In the course of that time, it has been engaged in the purchase and sale of wallpaper, most of which consisted of importations from China and Japan. A piece of paper representative of that involved in the instant case, although not taken from this importation, was received in evidence as plaintiff's exhibit 1. It was described by the witness as a sheet of hand-made paper, with a metal leaf on it, on which there is printed a Chinese design. He further stated that such paper, which is called Tea Chest or Tea Box Paper, from its nineteenth century use as coverings for tea boxes, has been chiefly used as wallpaper for at least 25 years to his knowledge; that while it has an incidental utility as a covering for a book or in the making of lamp shades, its principal use is, and has been since 1930, and prior thereto, for the covering of walls; that it is sold by his company all over the country, in every state, principally to interior decorators; that it is purchased as wallpaper, but he does not follow it into consumption so that he does not know of his own knowledge of its ultimate use in covering walls. He has, however, been in homes or places in New York where this type of paper has been used, and, except for a shade on a lamp, he has never seen it used as anything but wallpaper.

It appears, however, that this witness was, at the time of trial, only 40 years of age; that 25 years prior to the trial, he worked in the business, which was then his father's, after school hours, as a delivery boy; that, in 1930, he was with his father for the month of February only; that he then obtained a position in Wall Street where he remained some 8 years before returning to his father's business; that, although he merely wrapped papers such as exhibit 1, when he worked as a boy, and had no actual selling experience other than conversations with people who came to the place of business, he knew, having grown up in the business, as it were, how it was sold; and that it was sold primarily to decorators for use as wallpaper.

The term "hanging paper" which is found in paragraph 1409 of the Tariff Act of 1930 encompasses those types and varieties of paper which bear the common denominator of similarity of use. In the respect that such papers are used as coverings for walls, or, as we know it, wallpaper, they become a tariff entity distinct from the great bulk of papers enumerated in the paper schedule of said act. Tariff provisions whose applicability is thus to be determined have been described in customs parlance as *eo nomine* use designations, and the term "hanging paper" falls within that description.

Whether a given item of merchandise may properly find classification within an *eo nomine* use designation depends upon proof that at and prior to the enactment of the pertinent tariff provision such merchandise was of a class or kind of articles chiefly used for the purpose specified by the statute. *United States* v. *C. J. Tower & Son*, 26 C. C. P. A. (Customs) 1, T. D. 49534. In this instance, and especially in view of the concession that the involved paper is metal-coated, it was incumbent upon plaintiff to establish that at and prior to June 17, 1930, paper of the character of that here involved was chiefly used for covering walls.

We do not doubt that proof of chief use may adequately be adduced through the testimony of a single witness, when that witness possesses the necessary qualifications of familiarity with the product and its use throughout the United States at the critical period. *United States* v. *Gardel Industries*, 33 C. C. P. A. (Customs) 118,

C. A. D. 325; *Cotton, Neill & Co. (Ltd.)* v. *United States,* 11 Ct. Cust. Appls. 278, T. D. 39084; *United States* v. *Wanamaker,* 14 Ct. Cust. Appls. 285, T. D. 41888. We seriously question, however, whether the witness in this case established himself as competent to offer this type of testimony. Immediately at and prior to June 17, 1930, the witness had only 1 month's association with his father's business in a capacity which was undisclosed. Earlier, and at a time when the witness was a young boy, he worked as a wrapper and messenger, after school hours. He then had no selling experience nor personal knowledge of the ultimate use of paper of the character of that involved in this case. Neither was his background in the business sufficiently extensive to acquaint him with information material to this inquiry.

Accordingly, we are constrained to hold that the record in this case lacks the requisite proof for overcoming the presumptively correct classification of the collector to the effect that the merchandise at bar is metal-covered paper, dutiable at the rate of 4½ cents per pound and 10 per centum ad valorem, pursuant to said paragraph 1405, as modified, *supra.* The claim in the protest is, therefore, overruled. Judgment will be entered accordingly.