(C.D. 2235)

ARTHUR SALM, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 1, 1961)

*Wallace & Schwartz* (*Barnes, Richardson & Colburn* by *James H. Lundquist* of counsel) for the plaintiff.

*George S. Leonard*, Acting Assistant Attorney General (*Richard H. Welsh*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; FORD, J., dissenting

LAWRENCE, Judge: An importation of so-called percussion hammers was classified by the collector of customs as surgical instruments, and duty was imposed thereon at the rate of 45 per centum ad valorem, as provided in paragraph 359 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 359), as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462.

Plaintiff contends that the merchandise should be classified as articles not specially provided for, composed wholly or in chief value of base metal, and dutiable, accordingly, at the rate of 20 per centum ad valorem, as provided in paragraph 397 of said act (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

The pertinent text of the statutes above cited is here set forth— Paragraph 359, as modified, *supra*:

Surgical instruments, and parts thereof, including hypodermic syringes and forceps, composed wholly or in part of iron, steel, copper, brass, nickel, aluminum, or other metal, finished or unfinished (except hypodermic and other surgical needles, and except instruments and parts in chief value of glass) _____ 45% ad val.

Paragraph 397, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

   \*     \*     \*     \*     \*     \*     \*

    Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

   \*     \*     \*     \*     \*     \*     \*

       Not wholly or in chief value of tin or tin plate:

          Carriages, drays, trucks, and other vehicles, and parts thereof; fittings for baby carriages; and illuminating articles.    \* \* \*

   \*     \*     \*     \*     \*     \*     \*

          Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum \* \* \*. 20% ad val.

The merchandise in controversy is represented by exhibit 1.

Plaintiff's case rests upon the unrefuted testimony of Dr. Richard E. Heller, whose qualifications were very impressive. After graduating from the University of Chicago in 1933, Dr. Heller interned at the Chicago Memorial Hospital and, in 1934, served a preceptorship for 6 years in surgery; was active in teaching and research at Northwestern University, Michael Reese Hospital, and Cook County Hospital in Chicago. In 1942, he enlisted in the Army and was assistant chief and chief of surgery of a 700-bed evacuation hospital. After completing his military service in 1946, he returned to Chicago and resumed his practice there, specializing in the field of traumatic surgery. Dr. Heller continued to do some general surgery while teaching at Northwestern and is on the staff as senior attending surgeon at Wesley Memorial Hospital in Chicago. In addition, he is a fellow of the American College of Surgeons; a diplomate of the American Board of Surgery; a fellow of the American Association for the Surgery of Trauma; a fellow of the Chicago Surgical Society; and member of the American Medical Association. During the 25 years he has specialized in general and traumatic surgery, he has performed "Somewhere in the neighborhood of six to seven thousand" operations. As an incident to these operations, a patient may be treated prior to, as well as after, surgery. The period of time required for these treatments varies, as stated by Dr. Heller—

* * * If the patient comes to me directly with a diagnostic problem, the period prior to surgery may be a matter of weeks, even longer. If the patient is referred to me as a medical emergency, I may see the patient only a few hours prior to operation.

These treatments were not regarded by the witness as surgical.

Dr. Heller gave the following examples of the nature of preoperative treatments—

It is first obtaining a history of the patient's complaints, determining by clinical examination what the problem is as far as can be determined by this type of examination, and then, should it be necessary, sending him to a laboratory for X-ray studies, or chemistry studies, or any other diagnostic procedure that seems necessary. This is prior to admission to the hospital.

Although Dr. Heller had never used a percussion hammer of the particular model represented by exhibit 1, he was familiar with similar percussion hammers which he had used in the diagnostic study of patients, explaining that in diseased conditions where there is possibility of a neurological lesion it is important to test the reflexes to determine their presence or absence, or whether they have diminished or become hyperactive.

It was the opinion of Dr. Heller that while a percussion hammer might be used as a preoperative means of determining whether surgery was indicated, said article is a diagnostic instrument and is not a surgical instrument.

It is our view that Dr. Heller was preeminently qualified by reason of his extensive experience in surgery and from the wide knowledge acquired as a fellow of several medical and surgical societies, mentioned earlier in this opinion.

The parties hereto have stipulated and agreed that the percussion hammers in controversy are not plated with platinum, gold, or silver, and not colored with gold lacquer, and are wholly or in chief value of metal, other than gold, lead, platinum, silver, tin, and tin plate.

In its brief, plaintiff refers to decisions of this court and our appellate court in which the classification of certain articles as surgical instruments was sustained contending, however, that the use of such articles in the practice of surgery had been established.

The following cases are cited by plaintiff—

*United States* v. *Kny-Scheerer Corporation of America*, 14 Ct. Cust. Appls. 446, T.D. 42080—articles designated as surgical forceps, surgical clamps, and surgical needle holders, used in surgery.

*A. S. Aloe Co.* v. *United States*, 59 Treas. Dec. 1462, Abstract 14572—where the classification of stethoscopes as surgical instruments was sustained, the court commenting upon the lack of competent testimony to overcome the collector's decision.

*Jensen Salsbery Lab., Inc.* v. *United States*, 66 Treas. Dec. 363, T.D. 47313—certain plier-shaped eartaggers or applicators for use by veterinary surgeons to pierce the ears of cattle were held to be surgical instruments.

*V. Mueller & Co.* v. *United States*, 48 Treas. Dec. 651, Abstract 49975—electric lamps used chiefly, if not exclusively, as parts of surgical instruments.

The factual status of the cases above cited is materially different from the facts surrounding the case now before us in which testimony conclusively establishes that percussion hammers, such as those under consideration, are not used in surgery.

In *Carl Zeiss, Inc.* v. *United States*, 72 Treas. Dec. 538, T.D. 49237, cited by plaintiff, gastroscopes, instruments designed for use by surgeons in examining the human stomach, were held to be surgical instruments. There was evidence in that case "* * * that a physician other than a surgeon could not use the instrument."

The distinction between instruments which may be used in preoperative circumstances and those actually used in the performance of surgery is borne out by the following definition of the word "surgery"—

Webster's New World Dictionary (1958) :

surgery, *n.* 1. the treatment of disease, injury, or deformity by manual or instrumental operations, as the removal of diseased parts or tissue by cutting.

The most recent decision of this court in which the subject of surgical instruments was discussed was reported in *Empire Findings Co., Inc.* v. *United States*, 44 Cust. Ct. 21, C.D. 2148. The merchandise under consideration in that case consisted of otoscopes, which are electrical instruments, designed to introduce light into the ear canal and the ear drum for diagnostic purposes. We there held that the provision in paragraph 359, *supra*, contemplates scientific instruments which are chiefly used by surgeons in the practice of their profession. It appearing that an otoscope was seldom used for surgical purposes, it was held not to be a surgical instrument.

In the case now before us, the testimony of a highly qualified surgeon and a fellow of several medical societies demonstrates, in our opinion, that percussion hammers are not used in surgery and that they are used solely for diagnostic purposes. Note *United States* v. *F. W. Woolworth Co.*, 23 C.C.P.A. (Customs) 98, T.D. 47765.

Our concept of surgery suggests an operation in which there is a cutting of the tissue or other parts of the human or animal body in order to remove diseased tissue, an unhealthy organ, or by manual manipulation to correct a deformity, to mention a few instances. This is borne out by the definition of surgery above cited.

The testimony of Dr. Heller, a surgeon with 25 years' experience who had performed between six to seven thousand operations, wherein he stated that percussion hammers were not used in surgery and were not surgical instruments, is unrefuted, and the arguments advanced by plaintiff have not been challenged by the Government.

Upon the record and for the reasons stated, the claim of the importer is sustained.

Judgment will issue accordingly.

Ford, Judge: The collector of customs classified so-called percussion hammers as surgical instruments, which is a use provision under paragraph 359 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, as supplemented by T.D. 52462. In order for the plaintiff to prevail, it must be established by positive testimony that the chief use of the involved percussion hammers is not surgical.

I do not believe the record herein satisfactorily negates the presumption of correctness attaching to the classification of the collector that said merchandise is a surgical instrument. The record herein consists of the testimony of Dr. Richard E. Heller and a sample of the involved merchandise. While Dr. Heller, in my opinion, is a well-qualified surgeon, apparently specializing in the field of traumatic surgery, the evidence adduced from him was directed to his own per-

sonal experience in the use of percussion hammers. The record would seem to establish that Dr. Heller's practice was limited to the Chicago area, although there is some reference to Army service, which was not further developed to indicate in what other areas the doctor also practiced. The testimony of a doctor directed only to his personal use of an article in one State is not, in my opinion, sufficient evidence to negate chief use.

The percussion hammers involved herein may well be solely used for diagnostic purposes. However, the court is required to find positive evidence to negate the use as a surgical instrument before it is able to classify the involved merchandise under the "catch-all" provision of paragraph 397 of the Tariff Act of 1930. In the absence of such proof, either by positive testimony or by stipulation, the court has no alternative but to sustain the classification of the collector.

The majority opinion, in accepting the testimony presented, is, in effect, taking judicial notice of the fact that the involved percussion hammers are not chiefly used throughout the United States as surgical instruments. While judicial notice may be taken of well-known uses of an article, chief use must be established by positive testimony, *L. Tobert Co., Inc., American Shipping Co.* v. *United States*, 41 C.C.P.A. (Customs) 161, C.A.D. 544. I will admit that, in a case such as this, it is rather tempting to take judicial notice of the use of the involved article, as it was in the *Tobert* case, *supra*, wherein the late Judge William P. Cole, Jr., made the following observation, which I deem appropriate to the case at bar:

* * * It is tempting, therefore, for us to apply our judicial knowledge on the subject and once and for all determine the classification of such articles for tariff purposes in the future. We recognize, however, that despite what may be the experience and knowledge of one judge or another, such may not be in line with the chief use as determined via proof, which seems to us must be available in quantity and quality sufficient to assist the court in future litigation. It is to be regretted that the record in the case before us is not in that category. We find it almost totally unacceptable for such purposes.

For the foregoing reasons, I am of the opinion that plaintiff has failed to overcome the presumption of correctness attaching to the classification of the collector of customs and I would, therefore, overrule the protest.