(C.D. 2247)

Roberto Colon Machinery Co. *v.* United States

United States Customs Court, Second Division

(Decided April 10, 1961)

*Jaime Pieras, Jr.,* for the plaintiff.

*William H. Orrick, Jr.,* Assistant Attorney General (*Daniel I. Auster* and *Sheila N. Ziff,* trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges ; FORD J., dissenting

LAWRENCE, Judge: Plaintiff imported into the port of San Juan, Puerto Rico, certain merchandise consisting of 55-horsepower crawler tractors, identified on the entry papers as model K–55, and model K–55E.

The collector of customs classified the merchandise as machines, not specially provided for, other, in paragraph 372 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 372), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and duty was imposed thereon at the rate of 13¾ per centum ad valorem.

Plaintiff claims by its protest that the said tractors should be granted exemption from duty as agricultural implements pursuant to paragraph 1604 of said act (19 U.S.C. § 1201, par. 1604).

The statutes :

Paragraph 372, as modified, *supra* :

Machines, finished or unfinished, not specially provided for :
 Calculating machines * * *

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

 Other * * *_____ 13¾% ad val.

Paragraph 1604, *supra* :

Agricultural implements : Plows, tooth or disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, cream separators valued at not more than $50 each, and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts : *Provided,* That no article specified by name in Title I shall be free of duty under this paragraph.

The only witness in the case was Roberto Colon, doing business under the name of Roberto Colon Machinery Co., the plaintiff herein, who testified in substance as follows :

He is a machinery dealer and sugarcane farmer who has used tractors of the kind under consideration, the K–55 tractor, as depicted on illustrative exhibits 3 and 4. The witness has sold such tractors throughout the island of Puerto Rico and the Virgin Islands ; visited customers on their farms and advised them in the use of the machinery, giving demonstrations "to the extent of sitting on a tractor for four hours on a stretch." Since 1929, Colon has been in business for himself "primarily in agricultural implements and sugar machinery" and, during that period, has been familiar with the particular type of crawler tractor under consideration ; that the main use of these

tractors had been for plowing, cultivation, and sugarcane hauling in Puerto Rico. Colon had traveled throughout Florida, Louisiana, Indiana, Iowa, and California, where he had observed the use of tractors in those states. The witness stated:

> To my knowledge this particular brand of tractors is not sold in the United States but similar tractors as regards to construction and power. I may mention Caterpillar, which is the leading American make, International Harvester, Cle-track, Oliver, Allis Chalmers, American Tractors, J. S. Case Company. They manufacture tractors in the scope of power as these K–55.

which are generally used for agricultural purposes. His interest in the K–55 type of tractor starter "around 1950." Prior to that, about 1930, he represented the Cleveland Tractor Co., and, in 1934, the Bates Steel Mule, manufactured in Joliet, Ind., and more recently the American Tractor Co. in Indiana. The tractors identified in illustrative exhibits 3 and 4 are too small and have not sufficient power for logging operations.

When asked to explain the difference between tractors identified in collective exhibits 3 and 4 and the tractors which may be used for industrial purposes, such as logging and road construction, the witness explained at great length his experience in the agricultural field; his dealings with contractors; his engineering studies to acquire knowledge of machines for heavy industrial work, such as is required for road construction and logging; knowledge of the weight of the tractor, the power of the engine, and the mechanical benefits of the transmission. In the construction and logging industry, most of the material moved is by sheer power because "we are bucking against a dead load like gravel or sand in construction. In the logging we are moving a heavy log, a tree that has been cut down and usually is off the road—not usually, it's always off the road because it will deteriorate if it is dragged along the road." So the friction in both cases is tremendous, requiring a big engine with about 200-horsepower pull, whereas the K–55 is about 55 horsepower. Consequently, it would be uneconomical to use the K–55 model for industrial purposes.

When the witness was asked if he had tried to find various outlets or uses for his tractors, he replied:

> I have tried to find the market for these tractors and no contractor would ever attempt to take a road contract and construct this road with a tractor of this size.

Colon further stated:

> * * * we could not use one of these tractors to bulldoze even on loose dirt to make a road bed because the tonnage of dirt moved in the period of eight working hours would be very, very small compared to the dirt moved by the D–8, not counting the D–9. That's a monster, and that is more popular every day.

He regarded the K–55 as the ideal size for agricultural use, pointing out that the K–55 is similar to the D–4 Caterpillar, produced in Peoria, Ill.—the D–8 and the D–9, much larger and heavier tractors, are likewise a product of the Peoria plant. The D–8 was too heavy and has not the maneuverability desired for agricultural purposes. Moreover, its weight would have an undesirable tendency to tamp down the soil that has already been plowed. Plaintiff also introduced in evidence copy of a letter (exhibit 1), dated November 27, 1953, addressed to the Collector of Customs, San Juan, Puerto Rico, by the Chief, Division of Classification, Entry, and Value, in the Bureau of Customs of the Treasury Department, at Washington, D.C.

This letter states, in part:

* * * in the early part of 1938 an extensive inquiry was conducted throughout the United States which disclosed that Diesel crawler tractors are not chiefly used for agricultural purposes, but are chiefly used for industrial purposes. * * * that inquiry developed that in eastern Washington and Oregon, highly agricultural territory, the Diesel crawler tractors were chiefly used for agricultural purposes. In the area to the south of Washington and Oregon, in addition to those used for agriculture, many Diesel crawler tractors were used for industrial purposes, such as logging operations, construction work, and road building. It appeared, however, that in the Pacific coast areas such tractors were used slightly more for agricultural purposes than for industrial purposes.

The letter further states that investigation disclosed that, in the area east of the Rocky Mountains, Diesel crawler tractors were employed for nonagricultural purposes:

* * * such as logging operations, contractors' construction work, road construction, and highway maintenance, including stone removal, oil well production, and in mining and quarry work, to such an extent that they were chiefly to almost exclusively used for other than agricultural purposes.

It is notable that the letter (exhibit 1) refers to an investigation made in 1938 and, in its reference to Diesel crawler tractors, does not specify horsepower. Furthermore, the letter makes no mention of the economical status or the changing uses of crawler tractors of various horsepower.

It is upon that phase of the case that plaintiff's witness Colon, based upon his extensive travels in the United States, and his observations, experience, and knowledge of the character and usage of crawler tractors, seeks to minimize the importance to be attached to exhibit 1 by pointing out that developments in the construction, size, weight, and power of the modern crawler tractor have altered the face of the industrial economy to the extent that the tractors of relatively low horsepower, such as the K–55 or the D–4, have lost their utility in the industrial field to the heavier, more powerful and economical D–8 and D–9, with the result that the K–55 is chiefly used for agricultural purposes.

Many years ago, our appellate court, in *Richardson Co.* v. *United States*, 8 Ct. Cust. Appls. 179, T.D. 37289, held that carburetors so designed that they can only be affixed to and made parts of certain tractors, which tractors were so constructed that they were chiefly used for plowing and thrashing grain, were agricultural implements.

In the course of its opinion in the *Richardson* case, the court made this observation:

Advancement in methods of agricultural pursuits is [one] of the most conspicuous examples of what may well become matters of common knowledge, and as such, of judicial notice. * * *

the point there being made that the slow traveling, heavy duty tractor was supplanting the horse as motive power on the farm. The court recognized, moreover, that exceptional or incidental uses other than in agricultural pursuits were not sufficient to deny them classification as agricultural implements.

The provision for "agricultural implements" is one which implies use and, in order to receive the benefits of that classification, chief use must be established.

For many years the rule, as judicially declared, with respect to the period of time when chief use must be established in cases where use was implied, rather than expressed, by the statutes, was that chief use must be established at, or immediately prior to, the date of the enactment of the statute in which the classification provision appeared, *United States* v. *Belgam Corp. et al.*, 22 C.C.P.A. (Customs) 402, T.D. 47402, paper stock; *United States* v. *F. W. Myers & Co., Inc.*, 24 C.C.P.A. (Customs) 464, T.D. 48913, standard newsprint paper; and *United States* v. *C. J. Tower & Sons*, 26 C.C.P.A. (Customs) 1, T.D. 49534, standard newsprint paper.

In a more recent case, however, our appellate court has expressed the rule differently, *United States* v. *The Baltimore and Ohio R.R. Co. a/c United China & Glass Company*, 47 C.C.P.A. (Customs) 1, C.A.D. 719.

In *Kroder Reubel Co., Inc.*, and *Alltransport, Inc.* v. *United States*, 44 Cust. Ct. 274, C.D. 2186, where it was held that brass pole rings were properly classifiable as household utensils, we commented upon the *Baltimore* case as follows:

The tariff term with which the court was concerned in the *Baltimore* case was "tableware," a word which merely implied use, proof of which, in accordance with the principles above stated, should be related to the date of the enactment of the statute. However, the court, in no uncertain terms, expressed itself as follows:

We believe that where, as here, classification is to be determined on the basis of chief use, that determination should be made at the time of importation, *whether or not* the tariff provision in question explicitly requires classification by chief use. [Italics supplied.] [Italics quoted.]

The rule announced in the *Baltimore* case has much to commend itself as being a more realistic approach to the question of chief use, and a realization of the principle that merchandise should be taxed in accordance with commercial conditions as they actually exist. As we observed in the *Kroder Reubel* case, *supra*:

Much might be said in favor of the rule announced in the *Baltimore* case which would allow proof of chief use at the time of importation in all cases. Doubtless, it would greatly facilitate the administration of chief use provisions by customs officials and simplify the introduction of proof in the trial of cases in the courts. The present tariff act is now 30 years old and, in many instances, it is extremely difficult to prove chief use at or prior to the date of its enactment—June 1930.

Applying the doctrine announced in the *Baltimore* case, we are of the opinion that plaintiff has established the chief use of crawler tractors of the K–55 type, at and immediately prior to importation, as agricultural implements. Plaintiff's witness Colon, at the time of this trial, had been in the machinery business for some 35 years. He had been a dealer and user primarily of agricultural implements and sugar machinery. Based upon his observation, experience, and knowledge of the subject merchandise, it was his testimony that:

The main uses of these tractors have been for the plowing, cultivation, and sugar cane hauling.

especially in Puerto Rico and the Virgin Islands. Moreover, he had traveled extensively throughout Florida, Louisiana, Indiana, Iowa, and California, states well known for the cultivation of sugarcane or sugar beets, as well as other agricultural products. He had studied the construction, engineering characteristics, and uses of tractors, such as the K–55, as well as tractors of much greater weight and power. Applying his engineering technique and practical knowledge of the utility of tractors, he was clearly of the opinion that, at and prior to, the date of importation, tractors of the K–55 type in which he deals were known throughout the country as agricultural implements.

While it may be that at an earlier date tractors of the K–55 type might have had some use in the industrial field, the advent of the larger, heavier, more powerful tractors replaced the smaller tractor of the K–55 type, rendering it impractical and uneconomical to use the latter tractors for logging, road construction, or similar industrial purposes, with the result that the uses of the K–55 became restricted to agricultural purposes for which the larger and heavier types were not suited.

The testimony of the witness Colon was straightforward and positive in establishing chief use of the K–55 crawler tractor as an agricultural implement.

In *United States* v. *F. W. Woolworth Co.*, 23 C.C.P.A. (Customs) 98, T.D. 47765, our appellate court made the following observation:

We are not unmindful of the rule that in order to establish "chief use" the evidence of use must relate to the United States generally, and not to a limited portion thereof. It may be proper to observe, however, that the question of whether "chief use" has been properly established depends upon the issues and the evidence in each case.

We think it is a proper deduction from the evidence, and from the character of Exhibits 1, 2, and 3, that the involved articles would be used in substantially the same manner, and by substantially the same class of people, in one section of the country as in another, and that evidence establishing their chief use in a large area of the country is sufficient under the rule.

The court was there concerned with the question whether uninflated rubber balls were chiefly used for the amusement of children. Note, also, *Kubie & Co.* v. *United States*, 12 Ct. Cust. Appls. 468, T.D. 40668.

*Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T.D. 31120, involved the question whether a certain imported oil was commonly used for stuffing or dressing leather and "fit only for such use." The court held that the testimony of a single witness was sufficient to meet the requirements of the statute. In addition to the testimony of the witness, there was a special report of the appraiser stating that the importation consisted of birch-tar oil, distilled from wood and used in the manufacture of russia leather, and a chemist's report, showing that the "material is wood-tar oil, obtained by the destructive distillation of wood, probably birch wood." In its opinion, the appellate court stated in part:

* * * The Board held that the report of the appraiser was substantially confirmed by that of the official chemist, and that the evidence of the only witness produced on the part of the importers was not sufficient to establish that birch-tar oil was *commonly used in stuffing or dressing leather or that it was fit only for such use.* [Italics quoted.]

After evaluating the evidence, the appellate court made the following observation:

* * * The mere fact that the merchandise might *possibly* have some other use than that specified is not sufficient of and by itself to overcome or counterbalance the probative effect of the sworn declaration of a single witness of ten years' experience with the goods that they have but one use because he knows of but one use for them. United States v. Wells (77 Fed. Rep., 411). * * * Importers and merchants are naturally desirous of increasing the number of their customers and the demand for the goods in which they deal, and as they have every incentive for knowing the uses to which their wares are or may be put it is only fair to assume, at least *prima facie*, that the only uses known to them are the only uses of such wares. * * * [Italics quoted.]

In *Catton, Neill & Co. (Ltd.)* v. *United States*, 11 Ct. Cust. Appls. 278, T.D. 39084, our appellate court held that the uncontradicted testimony of a witness, with considerable knowledge on sugar-drying machinery, who knew that the machinery there in controversy could be used for sugar-drying, and did not know of any other purpose for which it was used, was sufficient to establish that such machinery was

chiefly used in this country for the manufacture of sugar. In the course of its opinion, the court made this observation:

* * * It is fair to believe that the witness was a business man of considerable experience with such machinery, and if there existed an equal or major use thereof other than in sugar making it is probable that he would have known of that fact. His lack of knowledge of such another use was therefore probative to the effect that there was no other such use. * * *

The court cited with approval, and quoted from, its decision in *Klipstein* v. *United States, supra.*

The underlying principle of the cases above cited has been applied in the following two cases recently decided by us:

*Empire Findings Co., Inc.* v. *United States,* 44 Cust. Ct. 21, C.D. 2148—Otoscopes.

*Arthur Salm, Inc.* v. *United States,* 46 Cust. Ct. 68, C.D. 2235 (decided February 1, 1961)—Percussion hammers.

In the case now before us, the witness Colon had for some 35 years dedicated himself to a study of the engineering features of tractors, and had gained an intimate, practical knowledge of the structure, character, and utility of tractors of various sizes, weights, and horsepower. He had traveled extensively throughout Puerto Rico and also in the United States from the Atlantic to the Pacific observing and applying his knowledge and experience to the potentialities and realities of tractors of various types for agricultural uses, as distinguished from tractors commercially and economically adapted for industrial use. Colon's testimony is quite adequate to overcome the presumption of correctness which attends the collector's decision, which the official papers reveal was based upon the letter (exhibit 1) from the Treasury Department. That letter refers to an entry No. 0780, which is not one of the five entries in this case; neither does the letter make any specific reference to the K–55 tractor with which we are now concerned.

Based upon the uncontradicted testimony of the witness Colon, the authorities cited, and the reasons stated, we find and hold that the tractors in controversy are entitled to entry free of duty as provided in paragraph 1604 of the Tariff Act of 1930 as agricultural implements. That claim in the protest is sustained.

Judgment will issue accordingly.

DISSENTING OPINION

FORD, Judge: The merchandise under consideration herein consists of certain 55-horsepower Diesel crawler tractors which are claimed to be entitled to entry free of duty under the provisions of paragraph 1604 of the Tariff Act of 1930 as agricultural implements.

The majority sustained the protest based upon the record made herein, consisting of the testimony of the importer. The witness who

has been in the agricultural implement business for himself since 1929 appears to be well qualified as to the use of crawler-type tractors in Puerto Rico and has on at least one occasion seen similar tractors used in Florida, Louisiana, Indiana, Iowa, and California. The observation of the use of crawler-type tractors by the witness in continental United States appears to have been in the period of time since 1950.

The record also contains testimony of the importer to the effect that plaintiff's exhibit 1, a letter from the Bureau of Customs, is based upon a report of the use of Diesel crawler-type tractors in 1938. It is contended that, since 1938, many technological changes have occurred which make a tractor of the 55-horsepower class obsolete for industrial use and such a tractor is, therefore, primarily used for agriculture.

The majority opinion, in arriving at its conclusion that the testimony of this witness overcomes the presumption of correctness attaching to the classification of the collector, makes the following statement:

In the case now before us, the witness Colon had for some 35 years dedicated himself to a study of the engineering features of tractors, and had gained an intimate, practical knowledge of the structure, character, and utility of tractors of various sizes, weight, and horsepower. He had traveled extensively throughout Puerto Rico and also in the United States from the Atlantic to the Pacific observing and applying his knowledge and experience to the potentialities and realities of tractors of various types for agricultural uses, as distinguished from tractors commercially and economically adapted for industrial use. * * *

If by the use of "from the Atlantic to the Pacific" in the foregoing, the majority means that the witness has seen crawler-type tractors used in Florida, Louisiana, Indiana, Iowa, and California, I will agree with the statement. However, in addition to Alaska and Hawaii, there are 43 other states between the Atlantic and the Pacific in which the witness has had no experience with respect to crawler-type tractors.

It is well established by customs jurisprudence that the classification of the collector carries with it a presumption of correctness. The importer, therefore, has a dual burden of proof in that he must establish the incorrectness of the classification and the correctness of the classification contended. *United States* v. *Loffredo Bros., Gehrig Hoban & Co., Inc.*, 46 C.C.P.A. (Customs) 63, C.A.D. 697.

In order to establish the classification under paragraph 1604 of the Tariff Act of 1930, evidence must be adduced as to the chief use of the merchandise in the United States. Local or partial use is insufficient. *Pacific Guano & Fertilizer Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 218, T.D. 42240.

The case of *United States* v. *F. W. Woolworth Co.*, 23 C.C.P.A. (Customs) 98, T.D. 47765, relied upon by the majority to enable it to deduce that the use in one area of the country by the same

class of people would be the same in another area, requires evidence of such use in "a large area of the country." The witness herein has experience in Puerto Rico and limited experience in the five states set forth, *supra*. This does not conform with my understanding of the phrase, "a large area of the country." The cases of *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T.D. 31120, and *Catton, Neill & Co. (Ltd.)* v. *United States*, 11 Ct. Cust. Appls. 278, T.D. 39084, cited by the majority for the principle that a businessman of considerable experience. would be aware of other uses of a particular article and that such experience is sufficient to establish chief use, does not necessarily control the fact situation herein. Plaintiff's exhibit 1 is indicative of use for industrial as well as agricultural purposes in 1938. The evidence corroborates this, since the witness testified that, until the middle 1940's the D-7 caterpillar tractors were the largest being built. The witness further indicated that the K-55 tractor involved herein was rated between the D-4 and the next larger size, the D-6 caterpillar tractor. The record herein substantiates the fact that, prior to the development of the larger and more powerful tractors, the smaller ones were used for road building, etc. This, the witness stated, was better than doing the work by hand or shovel. Except for the experience of the witness in Puerto Rico and his limited experience in the five states named, *supra*, it would appear the witness had merely deduced that because the smaller tractors were obsolete for industrial purposes, they were now being used for agricultural purposes. The witness also admitted that the involved tractor was designed for multiple purposes, which corroborates the statement contained in plaintiff's exhibit 1.

It is not necessary to discuss herein the principle of law enunciated by the majority as to the time when chief use must be established, since the record, in my opinion, fails to establish chief use on or about the date of the enactment of the Tariff Act of 1930 or on or about the date of importation herein.

I would, therefore, overrule the protest on the ground that plaintiff has failed to overcome the presumption of correctness attaching to the classification of the collector.