**No. 65966.**—Linden Equipment Corporation *v.* United States, protest 60/2043 (Los Angeles).

RAO, Judge: Plaintiff is an importer of certain British-made articles which are distributed under the name Motocarts. They were assessed with duty at the rate of 13¾ per centum ad valorem, as machines, not specially provided for, pursuant to paragraph 372 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739.

By timely protest, plaintiff has alleged, alternatively, that said Motocarts are dutiable at the rate of 10 per centum ad valorem within the provisions of paragraph 369(b) of said act for automobiles, automobile chassis, and automobile bodies, or are entitled to free entry as agricultural implements, as provided in paragraph 1604 of said act.

The claim for classification in paragraph 369(b), *supra*, has not been further pressed and is, therefore, deemed to have been abandoned. The provisions remaining in contention have the following context:

Paragraph 372 and T.D. 52739, *supra*:

Machines, finished or unfinished, not specially provided for:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Other (except * * *)_____ 13¾% ad val.
Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part:

Parts of sewing machines_____ 10% ad val.
Other_____ The rate for the article of which they are parts

Paragraph 1604:

Agricultural implements: Plows, tooth or disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, cream separators valued at not more than $50 each, and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: *Provided*, That no article specified by name in Title I shall be free of duty under this paragraph.

Whether or not the subject mechanisms are agricultural implements within the purview of said paragraph 1604 depends, under settled law, upon whether or not they constitute a class of articles chiefly used for agricultural purposes, that is to say, for the production of food or clothing for human existence. *United States* v. *Boker & Co.*, 6 Ct. Cust. Appls. 243, T.D. 35472; *United States* v. *Spreckels Creameries, Inc.*, 17 C.C.P.A. (Customs) 400, T.D. 43835.

Chief use is a question of fact, the determination of which depends upon proof of use throughout an adequate cross-section of the country, of an adequate proportion of the class of merchandise under consideration. *United States* v. *S. S. Perry*, 25 C.C.P.A. (Customs) 282, T.D. 49395; *L. Tobert Co., Inc., et al.* v. *United States*, 41 C.C.P.A. (Customs) 161, C.A.D. 544. While the testimony of a single witness may suffice to establish chief use, it must appear that he is qualified by training, experience, and knowledge to comprehend the function of the article and to be informed of its uses by the area of the population to which it is ordinarily and ultimately sold. *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T.D. 31120; *Catton, Neill & Co. (Ltd.)* v. *United States*, 11 Ct. Cust. Appls. 278, T.D. 39084.

The record in the instant case consists of the testimony of a single witness, one Herbert H. Linden, who was affiliated with the importer, together with certain exhibits illustrative of the imported article and of its uses. It appears from the evidence given by him that a Motocart is a type of automotive vehicle similar to a tractor, but having three wheels, with the transmission and engine mounted on the front wheel, which latter feature is unique with this vehicle. It also has a leader control which enables the operator to drive it from the outside, much as one would lead a horse. Other features of the Motocart are a 4-cycle single cylinder engine, 7 to 1 compression, approximately 8 horsepower, with 4 forward speeds and a maximum speed potential of approximately 15 miles per hour. It will operate for 8 hours on about 1½ gallons of gasoline; can be driven in low gear; and has the capacity to haul a 3,000-pound load over soggy or muddy ground. The construction of the vehicle is such that a load-carrying platform is set upon the chassis.

The witness testified that his company is the exclusive agency for the importation of Motocarts in the United States and in the entire Western Hemisphere. In the 5 years his company has been importing this article, he, personally, has sold 10 units to purchasers in California, New York, Utah, and

Louisiana. Of these, he personally saw the use of three, one on a farm in McFarland, Calif., for the hauling of seedlings, one on a cattle ranch for the feeding of cattle, and one on a ranch in Bakersfield, Calif., which grows alfalfa, cotton, potatoes, and other types of food. Of the remaining seven, he stated that four were sold for use on farms or ranches, one was sold to Salt Lake City for use by its park department, one was sold to the Knudsen Creamery Co. for yard work, and one to the Hercules Equipment Co. in Honolulu for the hauling of bricks, masonry, and cement around its own yard.

The witness was of opinion that a Motocart is peculiarly adapted for farming pursuits because of its four speeds, its ability to operate in low gear, its load-carrying capacity over soggy ground, its low gas consumption, and the leader control feature. He did not deny that it could be used for moving or hauling merchandise within any confined area, but stated that his efforts to sell Motocarts for industrial uses were not successful, because they lacked maneuverability and the capacity to haul large, heavy loads.

The record does not show how many more than 10 Motocarts were imported by the plaintiff over the period of years it has been in business in the United States. It is reasonable to infer, from the following testimony, however, that others were, in fact, imported and sold here:

Q. Mr. Linden, how many have you imported into the United States since you first started importing—imported and sold in the United States?—A. I must ask you a question. Are you talking to the retail purchaser now or to a dealer, or what?

Q. Well, how many have you personally sold?—A. I have personally sold about ten.

Q. And how many have [*sic*] anybody else that you know of sold?—A. This I can't say. I do not know.

Q. Are you the exclusive importer of this?—A. I am. It is my job to set up dealers and distributors throughout my area.

It is obvious that this constitutes a fatal omission in the proof, if the phrase "chief use" is to be intelligibly construed. How can the court make a determination of what is "chiefly" done with these articles on the basis of the use of but seven out of an indeterminate quantity in the agricultural field? Plaintiff suggests that the cases of *Klipstein* v. *United States* and *Catton, Neill & Co. (Ltd.)* v. *United States, supra,* are authority for the proposition that a *prima facie* case of chief use may be established by the testimony of a single witness, predicated upon his knowledge of sales and consumption of the article in issue. It must be remembered, however, that, in each of the cited cases, the single witness had no knowledge of any other use than the one claimed, which prompted the court to remark, in the *Klipstein* case:

* * * Importers and merchants are naturally desirous of increasing the number of their customers and the demand for the goods in which they deal, and as they have every incentive for knowing the uses to which their wares are or may be put it is only fair to assume, at least *prima facie*, that the only uses known to them are the only uses of such wares.

and, in the *Catton, Neill & Co. (Ltd.)* case:

* * * It is fair to believe that the witness was a business man of considerable experience with such machinery, and if there existed an equal or major use thereof other than in sugar making it is probable that he would have known of that fact. His lack of knowledge of such another use was therefore probative to the effect that there was no other such use.

In the instant case, on the contrary, while the witness sought to show that Motocarts are peculiarly adapted to agricultural pursuits, and are not suitable

for other purposes, his direct testimony reveals actual sales and use in industrial areas for nonagricultural purposes. To be sure, of the 10 units he sold, only 3 or 30 per centum found their way into industrial consumption, but we do not know, and we can not surmise, that the same ratio obtained in respect to the sales made by others.

Use by a limited number of persons and not by owners generally will not support a finding of chief use sufficient to overcome the presumption of correctness of the collector's classification of imported merchandise. *United States* v. *Spreckels Creameries, Inc., supra.*

Accordingly, the claim of plaintiff for classification of the instant merchandise as agricultural implements within the purview of paragraph 1604, *supra,* is overruled.

Judgment will be entered in accordance with this decision.