(C.D. 3253)

KOSCHERAK BROS., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided January 17, 1968)

*Siegel, Mandell & Davidson* (*Harvey A. Isaacs* and *Joseph Solte Kaplan* of counsel) for the plaintiff.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Glenn E. Harris* and *Brian S. Goldstein*, trial attorneys), for the defendant.

Before WATSON and BECKWORTH, Judges, and OLIVER, Senior Judge

OLIVER, Judge: This protest covers imported glass paperweights which were classified by the collector as blown glass household articles and assessed with duty under paragraph 218(f) of the Tariff Act of 1930, as modified by T.D. 51802 and supplemented by T.D. 51898, at the rate of 50 per centum ad valorem. Plaintiff claims they are properly

dutiable at the rate of 30 per centum ad valorem under the same paragraph 218(f) of the act, as modified by T.D. 53865 and supplemented by T.D. 53877, as blown glass articles other than household articles or other articles which are excepted from the reduced duty rate.

The respective modifications of the tariff statute read as follows:

Paragraph 218(f), Tariff Act of 1930, as modified by T.D. 51802, supplemented by T.D. 51898:

Table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), painted, printed in any manner, sandblasted, silvered, stained, or decorated or ornamented in any manner, whether filled or unfilled, or whether their contents be dutiable or free (except articles primarily designed for ornamental purposes, decorated chiefly by engraving and valued at not less than $8 each):

\*     \*     \*     \*     \*     \*     \*

Other_____ 50 cents on each article or utensil, but not less than 30% nor more than 50% ad val.

Paragraph 218(f), Tariff Act of 1930, as modified by T.D. 53865, supplemented by T.D. 53877:

All articles (not including table and kitchen articles and utensils) of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), painted, printed in any manner, sandblasted, silvered, stained, or decorated or ornamented in any manner, whether filled or unfilled, or whether their contents be dutiable or free:

\*     \*     \*     \*     \*     \*     \*

Other, valued not over $1.66⅔ each (except Christmas tree ornaments, *household articles*, and articles and utensils commercially known as bubble glass and produced otherwise than by automatic machine; and except articles and utensils blown or partly blown in the mold or otherwise and cut or engraved and valued at $1 or more) [Italics added]_____ 30% ad val.

At the time of trial, the parties stipulated the following: That the articles in issue as represented by plaintiff's exhibits 1, 2, and 3 are not valued over $1.66⅔ each; that they are not Christmas ornaments; that they are not articles or utensils commercially known as bubble glass; that they are not cut or engraved; and that at the time of importation they were known in the trade and commerce of the United States as paperweights. As plaintiff has specifically abandoned all other claims mentioned in its protest, it clearly appears, as agreed upon by counsel, that the sole issue in this case is whether the imports are articles chiefly used in the household.

Exhibits 1, 2, and 3 may be described as semisolid, round or oval-shaped, glass articles with flattened bases. Exhibit 1 measures about 2¾ inches in diameter and is 3 inches in height. Exhibits 2 and 3 are 3 inches in diameter and 2¾ inches high. A colorful artistic pattern fills the inside portions of exhibits 1 and 3, while exhibit 2 has an implanted floral arrangement in its base section.

The plaintiff called three witnesses to testify and the defendant called one. The plaintiff's witnesses included Mr. Morris Blau, president of Koscherak Bros., Inc., a firm importing European glass and art ware; Mr. Benjamin F. Allen, sales manager of Arnart Imports, importers of ceramic and glass articles; and Mr. Elliot Leviton, New York metropolitan area salesman for Bibi & Co., importers of crystal and bronze, and prior thereto, owner of a gift shop in New Jersey. Mr. Blau, who is responsible for the buying and selling in his company and who purchased these items in Italy, stated that the main reason in buying them was that he wanted paperweights and that their design, beauty, and salability were other factors influencing his purchase.

All three witnesses testified to having sold articles such as plaintiff's exhibits 1 through 3 to gift shops and department stores. In department stores, they are generally displayed in the stationery section. Blau, in traveling throughout the country on business trips, had observed them in the offices of his firm's sales representatives and at his bank in New York to which he had given one as a gift. Allen, who sold them principally in the Southeast and Northeast, observed them "maybe two or three places" in his buyers' offices, and Leviton on a few occasions in buying offices around New York City and once in a law office in the Bronx. None of the witnesses recalled ever seeing them in a home, but Allen admitted on cross-examination that they were suitable as a paperweight in a home, while Leviton thought they might be suitable in the home as a decorative item.

The defendant's witness was Mr. Paul Jokelson who described himself as a representative of some French watch producers selling watches and parts in this country, and a technical consultant on paperweights in New York City for the Baccarat Co., the largest manufacturer of glass and crystal in France. He stated further that he had

initiated Baccarat's manufacture of paperweights in France; that he has been collecting paperweights since 1929 and in 1952 he founded the Paperweight Collectors Association in this country and is the self-elected president over a membership of some 620 collectors; and that he has authored books and articles on antique and modern paperweights. It was conceded by the plaintiff that he is an expert in this field. Jokelson testified that he was familiar with paperweights such as plaintiff's exhibits 1, 2, and 3 and had seen that type of article manufactured in Italy. He had also observed them in the homes of 60 or 70 members of his association in this country. In his opinion, such articles are purchased for their beauty and design, and they are used in the home primarily as ornaments and not for utilitarian purposes. He had never seen them used to hold down papers.

On cross-examination, the witness agreed that the word "paperweight" generally suggests an article to weigh on papers.

The collector's classification of the imports as household articles is, of course, presumably correct, and it is incumbent upon the plaintiff to overcome this presumption by showing a different chief use or, at any rate, a chief use outside the home. To establish a different chief use from that found by the collector has been held to require a showing of the use, at the time of importation, of the articles in question and the class to which they belong by a preponderance of competent evidence over an adequate geographical cross section of the country. *United States* v. *The Baltimore & Ohio RR. Co. a/c United China & Glass Company*, 47 CCPA 1, C.A.D. 719; *L. Tobert Co., Inc., American Shipping Co.* v. *United States*, 41 CCPA 161, C.A.D. 544. However, it has also been recognized that chief use can be shown by the testimony of a single, competent, and credible witness or where the sample serves as a compelling and potent witness on behalf of plaintiff's claim. *Catton, Neill & Co. (Ltd.)* v. *United States*, 11 Ct. Cust. Appls. 278, T.D. 39084; *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995.

In the instant situation, we are unable to find from either the testimony, or sample, or both, sufficient evidence to discharge plaintiff's burden on this issue of chief use. The bulk of plaintiff's testimony concerning observed use was restricted to the offices of the selling agents and buyers of the witnesses themselves and were, therefore, persons very likely to be in possession of the imports in a manner other than through normal consumer channels. Furthermore, this is not a case where the testifying witnesses demonstrated a familiarity with the ultimate market in which the goods move, or one where the merchandising of the product would be indicative of its use. See *Davis Products, Inc.*, and *Frank M. Chichester* v. *United States*, 59 Cust.

Ct. 226, C.D. 3127. Plaintiff's witnesses, although experienced in importing and selling these glass paperweights to retail outlets such as department stores and gift shops, did not reveal any knowledge on the makeup of the consumer market as opposed to the wholesale. On the other hand, the mere fact that the articles are displayed in the stationery section of department stores, to say nothing of gift shops, does not suggest an end use in the office as opposed to the home. Would not a housewife normally shop such stores as opposed to, say, office equipment outlets, and does not the home require stationery supplies and/or furnishings?

With respect to the potency of the sample evidence, the defendant's expert witness on paperweights, Mr. Jokelson, testified that these imports are copies of antiques; that he has observed them displayed in the homes of approximately 60 to 70 members of his Paperweight Collectors Association in this country; and that, in his opinion, this type of paperweight has value as an item of ornamentation for the home. While Jokelson's observed use suffers the same defect attributed to plaintiff's evidence, i.e., it is limited in scope to members of his 650-member association who are persons very likely to possess such articles in their homes, his testimony does point up the samples' suitability for decorative as well as utilitarian use. Since the parties have stipulated that these articles are paperweights, the question is not *whether* they are used more often to hold down papers than as ornaments, but *where* they are used the most in whatever capacity. The deficiency in plaintiff's case in chief is thereby further compounded by testimony that such paperweights are suitable objects of ornamentation, a quality perhaps more readily associated with household surroundings than with commercial settings.

Plaintiff has cited two previous cases on paperweights decided by this court, namely, *Ace Importing Co., Inc.* v. *United States*, 44 Cust. Ct. 468, Abstract 64185, and *Ace Importing Co., Inc.* v. *United States*, 50 Cust. Ct. 226, Abstract 67488. The same assessment and the same claim (albeit by similitude in the second *Ace* case) involved in this case were involved in those cases. We agree with the Government, however, that the decisions in the *Ace* cases, *supra*, did not purport to hold that all articles known as paperweights are dutiable as nonhousehold items at 30 per centum ad valorem under paragraph 218 (f). Each case stands upon its own facts.

The first *Ace* case, *supra*, involved hollow glass balls with plastic bases containing small figures inside and filled with liquid and small metallic particles so that when moved or shaken a snowstorm-like scene was created. The uncontradicted testimony of the sole witness, an officer of the plaintiff corporation, was to the effect that he had ob-

served them for approximately 3 years mainly as paperweights in business offices and also, on occasion, in homes as a decoration or knick-knack, or in playrooms. Viewing the sample as a potent witness to support the testimony concerning the use of the article as a paperweight in business offices, we held that, on the record presented, plaintiff had made out a *prima facie* case to support its claim. The second *Ace* case, *supra*, concerned importations of smaller, oval-shaped, plastic paperweights with various scenes painted on the inside back portion. They also were filled with liquid and white particles to create a snowstorm effect when moved or shaken. Five witnesses testified for the plaintiff with respect to the use of the articles in all kinds of business settings, such as stores, professional offices, insurance companies, banks, brokerage offices, and motels. The defendant offered no testimony and refrained from filing a brief. We held that the record supported plaintiff's claim.

The use testimony in support of plaintiff's claim in this case differs from that which was before us in the *Ace* cases, *supra*, in that (1) it is limited, as mentioned previously, to the offices of the agents and buyers of the wholesale sellers of the merchandise, and (2) it is contradicted by the testimony of the defendant's witness. Furthermore, the articles in this case differ in appearance from the merchandise in the *Ace* cases in that they are all-glass items of more substantial construction, and they were characterized by expert testimony as copies of antique designs possessing significant ornamental value.

In the final analysis, the disposition of this case rests on the finding that, on the record presented, plaintiff has failed to make a *prima facie* showing on the issue of chief use and the presumption behind the collector's classification remains intact. For the foregoing reason, the protest in this case will be overruled and judgment will issue accordingly.