(C.D. 3127)

DAVIS PRODUCTS, INC.
FRANK M. CHICHESTER } *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 25, 1967)

*Stein and Shostak* (*S. Richard Shostak* of counsel) for the plaintiffs.
*Carl Eardley*, Acting Assistant Attorney General (*James S. O'Kelly* and *Dominick M. Minerva*, trial attorneys), for the defendant.

Before WATSON and BECKWORTH, Judges, and OLIVER, Senior Judge

OLIVER, Judge: The protests consolidated in this case cover importations of inflatable vinyl reindeer and Santa Claus figures and sets. They were assessed with duty at the rate of 35 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930, as modified, as toys, not specially provided for. Plaintiffs claim proper classification as manufactures of rubber, not specially provided for, under paragraph 1537(b) of the act, as modified, by virtue of the similitude provision in paragraph 1559(a), as amended. All other claims once urged by plaintiffs have been abandoned.

The pertinent tariff provisions provide as follows:

Paragraph 1513, as modified by T.D. 52739:

Toys, not specially provided for:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Other (except * * *) _____ 35% ad val.

Paragraph 1537(b), as modified by T.D. 53865 and T.D. 53877:

Manufactures of india rubber or gutta-percha, or of which these substances or either of them is the component material of chief value, not specially provided for (except * * *):

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Other_____ 12½% ad val.

Paragraph 1559(a), as amended:

Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; * * *.

Before the introduction of evidence, the parties stipulated, pursuant to a ruling of the Bureau of Customs (subsequently received in evidence as plaintiffs' exhibit 5), that the reindeer and Santa Claus sets, item numbers 970 and 971 in entry 21714 covered by protest number 64/1096, were not toys and were properly dutiable as claimed under paragraph 1537(b) by similitude.[1] It was also agreed to have Frank M.

---

[1] At trial, plaintiffs' counsel stated that item No. 970 inadvertently appears as item No. 907. However, examination of the entry papers indicates that only item No. 971 is listed in entry 21714 as a Santa set. Furthermore, entry 19048 appears to contain both item Nos. 907 and 971 as "Santa Sets." It would seem that the stipulation was meant to cover the imported Santa and reindeer sets no matter what entry they were in.

Chichester, trustee in bankruptcy for Davis Products, Inc., added to this case as a party-plaintiff.

Plaintiffs' evidence consists of the testimony of one witness and several exhibits. The defendant introduced no evidence.

Mr. Sidney L. Friedlander, presently employed by Murphy Reier, Inc., specialists in premiums and sales promotion ideas, called by the plaintiffs, stated that he was previously associated with Davis Products, Inc. (hereinafter referred to as Davis), from 1953 until 1964, the last 8 years of which he served as vice president. He holds a degree in electrical engineering from the University of California at Los Angeles and has had experience as a test and design engineer in the electronics field. On coming to Davis, he was put in charge of the design and production of electronic equipment for the electric heat sealing of vinyl materials.

Friedlander testified that he was responsible for the introduction of the merchandise at bar into the commerce of the United States at a time when outdoor Christmas decorations were composed of cardboard, wood, masonite, or some other hardboard product. Therefore, in manufacturing the vinyl inflatables, the purpose was to achieve a display article for outdoor as well as indoor use. To this end, they are constructed with a heavier gauge vinyl than usually found in the toy inflatables that Davis also manufactures and imports. The vinyl is also of a lower temperature formulation to withstand cold weather conditions. The expressions of the figures, as well as their proportions, are done in a realistic manner, and each figure contains as an integral part fastening tabs enabling it to be nailed in place on the ground or floor or on roofs of houses. The tabs are not inflatable and they are kept separate from the air pocket by a heat seal. He further testified that the only other merchandise he had seen which was similar to these inflatables was reindeer figures of smaller size composed of natural rubber. He had never seen them made of synthetic rubber.

As vice president of Davis, this witness was also active in buying and selling, and he had actually sold the largest percentage of the inflatable Christmas items handled by his firm. In this capacity, he personally traveled around the country selling, particularly in California, Chicago, and New York. He also attended trade shows in these and other areas of the country. He testified that he saw "hundreds of these" articles on roof tops and front lawns throughout southern California and in the Christmas display sections of stores in the Midwest and in the New Jersey area. In selling to department stores, he dealt with the Christmas decoration buyers. Because of climate conditions, California was the largest market, with Florida and Georgia next.

Possessing a familiarity with Davis' toy line of products, the witness was of the opinion that the merchandise at bar lacked cartoon and noise-making features necessary in the design of toys. A child cannot ride them and they were not made to offer play value. He admitted that on occasion his children would pick one of them up but that they would not take it as "one of their pet toys." However, in traveling and visiting peoples' homes, he had always seen them being used as objects of Christmas displays. He had never seen other children playing with them.

Plaintiffs' exhibit 1 was identified as a reindeer figure appearing as item number 904 on the invoices and described in plaintiffs' exhibit 3, an advertising flier circulated to Davis' customers and prospective customers, as measuring 19 by 29 inches. Exhibit 3 also contains illustrations and dimensions of the other reindeer appearing on the invoices, to wit: Item number 900 (16 by 24 inches), item number 913 (22 by 33 inches), and item number 916 (31 by 45 inches). Plaintiffs' illustrative exhibit 2 was received in evidence as a Santa Claus figure illustrative of the type covered by the instant importations, only larger in size. Exhibit 6 was identified as a 48-inch reindeer said to be representative of invoice item number 916, and exhibit 4 contains a Santa Claus and reindeer set (item number 971) the subject of the stipulation in this case, *supra*. The reindeer in exhibit 4 are not permanently attached to the Santa-in-sled figure.

A toy being an article chiefly used for the amusement of children, as defined in paragraph 1513, it was plaintiffs' burden of proof to show, on the basis of an adequate geographical section of the country, another and different prevailing use for the imported merchandise. *L. Tobert Co., Inc., et al.* v. *United States*, 41 CCPA 161, C.A.D. 544. To establish such proof, it has been recognized that the uncontradicted testimony of a single, competent, and credible witness may be sufficient. *Catton, Neill & Co. (Ltd.)* v. *United States*, 11 Ct. Cust. Appls. 278, T.D. 39084; *J. E. Bernard & Company, Inc.* v. *United States*, 27 Cust. Ct. 291, Abstract 55793.

In the instant case, testimony for the plaintiffs was given by a man who demonstrated an intimate knowledge on every phase of the handling of this merchandise—design, production, importation, and sale. We quite agree with the statement in defendant's brief that he is "an interested witness," interested in the sense that he was in a position to know, and it was logical for him to know, the characteristics and uses of the articles at bar. As such, his testimony is of high probative value. *United States* v. *The Baltimore & Ohio R. R. Co. a/c United China & Glass Company*, 47 CCPA 1, C.A.D. 719; *F. B. Vandegrift & Co., Inc.* v. *United States*, 56 Cust. Ct. 103, C.D. 2617. In the oft-cited case of *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, 124–125, T.D.

31120, relied upon by plaintiffs here, it was observed long ago (1910) that—

* * * Importers and merchants are naturally desirous of increasing the number of their customers and the demand for the goods in which they deal, and as they have every incentive for knowing the uses to which their wares are or may be put it is only fair to assume, at least *prima facie*, that the only uses known to them are the only uses of such wares. * * * If the testimony of the importers' witness had been contradicted or impeached in any way, the evidence of additional witnesses would have been very valuable, not to say necessary, but in the absence of such impeachment or contradiction the sworn declaration of one was as effective as that of a number. * * *

Here we have uncontradicted testimony that the vinyl inflatables, the subject of this litigation, were specifically designed as outdoor/indoor Christmas display decorations to invade a market using various hardboard materials. The special construction of the vinyl and the presence of fastening tabs are indications of that purpose. Observed use as home Christmas displays covered southern California, described as the largest market for these items, as well as store displays in the Midwest and parts of the East. In selling these articles to department stores across the nation, the witness Friedlander always dealt with the Christmas decoration buyer, not the toy buyer. Although a merchandising medium may not *always* be a proper means of determining classification (cf. *United States* v. *Ignaz Strauss & Co., Inc.*, 37 CCPA 32, C.A.D. 415, cited by the defendant), sometimes, conversely, where merchandise is sold in stores having separate and distinct departments, a showing that certain articles are marketed through one department instead of another can have obvious probative value. *United States* v. *Brier Manufacturing Company*, 52 CCPA 35, 37, C.A.D. 854. In such a situation, whether merchandising follows use or use follows merchandising, the fact is that such a relationship can be normally inferred as an aid to the court's determination, unless the contrary is shown. Plaintiffs' exhibit 3, the advertising flier sent to actual customers and prospective customers, corroborates the foregoing evidence in that all of the protested items appearing thereon are offered as "Inflatable Christmas Decorations" for lawn or window use.

Of course, as Friedlander's testimony indicated, these articles are susceptible to handling by children. Such a fact, however, does not *per se* militate against a finding of a different chief or predominant use. *United States* v. *Baltimore & Ohio R. R. Co. a/c United China & Glass Company*, *supra*. The defendant makes mention of the fact that the invoice description of this merchandise is "Inflatable Toys" and argues that it amounts to *prima facie* evidence of what it declares. Whatever weight is to be given to invoice descriptions when unaccompanied by other record evidence or evidence of doubtful value, such descriptions

are insufficient to stand as effective rebuttal to the positive testimony of a competent, credible, and experienced witness. *United States* v. *Paul Puttmann*, 21 CCPA 135, T.D. 46466; *J. E. Bernard & Company, Inc.* v. *United States, supra*. Moreover, the Santa and reindeer sets in this case were subject to the same invoice descriptions, but this did not deter the Bureau ruling or the stipulation agreement respecting their proper identity. It will not deter us from finding, as we do, that on the evidence presented, there has been a *prima facie* showing that the individual vinyl Santa and reindeer figures, as well as the sets, are primarily marketed, sold, and used, as articles of Christmas display and not as toys.

In view of the Bureau ruling (plaintiffs' exhibit 5) and the stipulation of the parties on the classification of the Santa and reindeer sets, the Government in its brief concedes the propriety of plaintiffs' claim under paragraph 1537(b), *supra*, if the individual figures are held not to be toys. Therefore, on the basis of this record, we hold that the inflatable vinyl Santas and reindeer involved in these entries, whether imported individually or in sets, are classifiable by similitude to manufactures of rubber under paragraph 1537(b) of the tariff act, as modified, *supra*, at 12½ per centum ad valorem. To the extent indicated, the protests are sustained and judgment will be rendered accordingly.