**DAVIS PRODUCTS, INC. and Frank M. Chichester**

v.

**UNITED STATES.**

**Protest 62/3082–66093; C.D. 3262.**

United States Customs Court, First Division.

Jan. 29, 1968.

Stein & Shostak, Los Angeles, Cal. (S. Richard Shostak and Marjorie M. Shostak, Los Angeles, Cal., of counsel), for plaintiffs.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Harold Grossman, Mollie Strum, James S. O'Kelly, New York City, and Owen J. Rader, New York City, trial attorneys), for defendant.

Before WATSON and MALETZ, Judges.

MALETZ, Judge:

The issue in this case is the proper classification of certain inflatable vinyl articles representing various water animals. Samples of the articles in evidence include a swan, 28 inches long, 30 inches high; a seal, 28 inches long, 27¼ inches high; a dolphin, 48 inches long and 18 inches high; and a walrus, 38 inches long and 29 inches high.

Duty was assessed at the rate of 35 per centum ad valorem under the provision for other toys, not specially provided for, in paragraph 1513 of the Tariff Act of 1930, as modified by T.D. 52739. Plaintiffs [1] argue that the imports are not toys, but rather are dutiable by similitude to manufactures of rubber, not specially provided for, under the provision of paragraph 1537(b) of the above

---

1. Frank Chichester, trustee in bankruptcy for Davis Products, Inc., was added to the case as a party plaintiff.

act, as modified by T.D. 53865 and T.D. 53877.

Quoted below are the statutory provisions involved.

Paragraph 1513 of the Tariff Act of 1930, as modified by T.D. 52739:

Toys, not specially provided for:

\* \* \* \* \* \*

Other (except \* \* \*)..35% ad val.

The term "toy" is defined in paragraph 1513 as:

\* \* \* an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

Paragraph 1537(b), as modified by T.D. 53865 and T.D. 53877:

Manufactures of india rubber or gutta-percha, or of which these substances or either of them is the component material of chief value, not specially provided for \* \* \*:

\* \* \* \* \* \*

Other .......... 12½% ad val.

Paragraph 1559, as amended by the Customs Simplification Act of 1954:

(a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; \* \* \*.

At the trial—which was held in Los Angeles and New York City—two witnesses testified for plaintiffs, one of whom was the designer, importer, and sales manager of this line of products for plaintiff, Davis Products, Inc., while the other was a 31-year-old former all-American and professional basketball player. The Government presented the testimony of five witnesses, two of whom were assistant buyers for the toy departments of large metropolitan New York department stores,[2] and two others who were the toy buyers for large Eastern chain department stores.[3] The Government's fifth witness was a commodity specialist in the Los Angeles Office of the Bureau of Customs.

There was no real dispute between the parties that the imports are used principally for purposes of amusement.[4] Also, the parties recognized that under settled judicial construction, the word "children" as employed in the statutory definition of the term "toy" in paragraph 1513 of the Tariff Act of 1930 means boys below the age of 14 and girls below the age of 12. E. g., United States v. Abercrombie & Fitch Co., 20 CCPA 267, 271, T.D. 46060 (1932); United States v. Grunberg, 41 CCPA 1, C.A.D. 520 (1953). In such circumstances, the question is whether plaintiffs have proved by a preponderance of the evidence that the articles are not chiefly used by "children."

The evidence is addressed to various facts relating to the design, merchandising, and observed use of the imports—from which each side draws a different inference regarding the ultimate fact at issue. As to design, the evidence is uncontradicted that the articles are designed for use in water; that they are constructed with a vinyl material especially resistant to sunlight deterioration; that they have been reinforced by a special sealing process on strain points to permit rugged water usage; that they will support the following maximum weights: the swan—170 pounds, the seal —150 pounds, the dolphin—160 pounds; and the walrus—250 pounds; that each possesses some kind of stabilizing fins; and that with dexterity, each can be rid-

---

2. Gimbel Brohers and R. H. Macy and Company.

3. S. Klein Department Stores and E. J. Korvette.

4. The record indicates an occasional use of the items as pool decorations.

den upright in the water.[5] Plaintiffs' designer-importer witness, adding to these facts his personal observations of use, testified that the articles were primarily designed to be ridden by teen-agers and adults.

■ There is other record evidence, however, tending to contradict that conclusion. First of all, the 1961 catalogue of plaintiff, Davis Products, Inc., received in evidence, depicts and describes these same water animals as "WATER TOYS WITH PERSONALITY," specifically referring to the swan as "Fun to ride for child or adult." Again, the 1962 catalogue, while deleting the word "toy",[6] exclaims "Five Giant size water Animals designed for all ages." Next to the walrus figure the copy reads "Ride him, wrestle with him * * * an all round pool animal." Secondly, plaintiffs' designer-witness testified that the articles were designed with the idea in mind that they would be used to jump upon from diving board heights and, thereby, "weight would be severalfold" its normal amount. Based upon the previously described *maximum* supportable weights in evidence, it would appear that such water activity would be limited to the lighter weights of pre-teen children. Lastly, the testimony of plaintiffs' athlete-witness points up the extreme difficulty encountered in trying to actually ride these animals. It took him 4 days of application to meet with any success; a fellow athlete gave up completely; another had to let air out to ride; and a 14-year-old, all-star athlete was also unsuccessful.[7]

From the evidence elicited on this point, we observe merely that the construction and size of the imports permit their use for water riding by teenagers and adults of sufficient dexterity and patience. We are unable to find as an established fact, however, that these articles were solely or primarily designed for such use.

With respect to the manner in which the imports are merchandised for sale, plaintiffs' main witness, who was also sales manager for this line of merchandise, testified that he sold them to the sporting goods departments of stores in southern California; that he had seen them displayed with air mattresses, surfriders, and wading pools in separate areas at discount stores; and that in selling to Western Auto, a large nationwide customer, he did not deal with the toy buyer. On the other hand, the Government's four retail witnesses, representing large Eastern department and chain stores, testified that identical merchandise, as well as competitive merchandise similar in size and appearance,[8] is uniformly sold to, displayed in, and sold from the toy departments of their respective companies. Indeed, three of these witnesses who had responsibilities in the areas of buying, displaying, and advertising the items testified that in their opinion the sales approach with regard to this merchandise was essentially geared to stimulate the interest of pre-teen children. While it

---

5. An exhibit introduced by plaintiffs contains photographs variously showing a teenage boy and two male adults sitting upright on the animals in undisclosed depths of water.

6. Plaintiffs attempted, through their first witness, to convey the notion that, although originally marketed (1960) as a toy item, the design of the articles proved frustrating to pre-teen users and, consequently, a shift in selling approach and, thereby, use took place. Not only is plaintiffs' evidence on this point unconvincing, but, as it specifically relates to use in 1962, it is beyond the relevant. The disputed merchandise was imported in 1961 and evidence of use must relate to the time of (or prior to) importation. E. g., New York Merchandise Co., Inc. v. United States, 27 CCPA 117, C.A.D. 72 (1939); United States v. C. S. Emery & Company, 53 CCPA 1, 6, C.A.D. 868 (1966).

7. This evidence runs counter to that given by plaintiffs' other witness that from a random group of children tested, the 15- and 16-year-olds could ride all four animals after 20 or 30 minutes "without a great deal of trouble." R. 21.

8. The testimony of two of these witnesses related to the identical merchandise, while the testimony of the other two witnesses dealt with similar merchandise.

has been recognized that under certain conditions the merchandising of articles may shed light on what they are or how they are used,[9] this is not the case here where the evidence indicates a variety of channels through which the merchandise is displayed and offered for sale.

The testimony concerning observations of actual use of these articles is somewhat conflicting. Plaintiffs' witnesses testified in the main to having seen them ridden by teenagers and adults in swimming pools in southern California. They conceded, in addition, that they had also observed pre-teens using them on occasion by pushing them around in the water. By contrast, three of the defendant's witnesses observed their use on the east coast primarily by the 13-and-under age group in private pools and the wading pool areas of beach clubs and public pools. The manner of use was typically described by them as follows:

> Q. How were they using them when you saw them used?—A. Using them as a float to put their arms around it and keep buoyant in the water or just as a throwing device between two or three children in a pool, passing it from one to the other, or just dunking it, or something like that. [R. 94–95.]

The defendant's west coast witness corroborated this type of use based upon observations in his home area—Los Angeles, California.

In essence, the testimony as to use indicates (1) that when these water animals are ridden, the riders are usually teenagers and adults; (2) that pre-teens use them; and (3) that they have water uses other than their capacity to be ridden. The evidence is generally in accord in describing *how* the merchandise is

used but is in conflict in identifying *who* the ordinary users are.

The burden of proof in chief use cases ordinarily requires a preponderance of competent evidence representative of an adequate geographical cross section of the nation. E. g., L. Tobert Co., Inc., American Shipping Co. v. United States, 41 CCPA 161, C.A.D. 544 (1953). Whether such burden is discharged depends, of course, upon the facts in each case. E. g., United States v. F. W. Woolworth Co., 23 CCPA 98, T.D. 47765 (1935). The record evidence in this case, directed as it is to areas of design, merchandising, and observed use, has failed to establish facts from which this court can draw an inference favorable to plaintiffs on the ultimate issue of chief use. At best, we can conclude only that the imports are water articles capable of amusing all ages and have been actually so used.

Plaintiffs' reliance on Fred Bronner Corp. v. United States, 57 Cust.Ct. 428, C.D. 2832 (1966), is misplaced since the factors in that case of uncontradicted evidence, supported by the sample merchandise, are not present here.[10] Nor are plaintiffs aided by the decisions in Louis Wolf & Co., Inc. v. United States, 62 Treas.Dec. 969, Abstract 21935 (1932), and S. H. Kress & Co. v. United States, 2 Cust.Ct. 736, Abstract 41517 (1939), holding that rubber water animals were dutiable under paragraph 1537. For *Louis Wolf* was submitted upon stipulation and the court in *Kress* found—in contrast to the situation here —that the evidence there presented showed a chief use by adults. Furthermore, there is no showing of a similarity between the merchandise in those cases and that before us here.[11]

---

9. See United States v. Brier Manufacturing Company, 52 CCPA 35, 37, C.A.D. 854 (1965); Davis Products, Inc., et al. v. United States, 59 Cust.Ct. ——, C.D. 3127 (1967).

10. *Bronner* involved the classification of miniature vehicles representing antique and classic cars, buses, trucks, and the like. Plaintiff called four witnesses, two of whom were experts in the fields of

model and toy design, and the court held that their testimony and the sample evidence made out a *prima facie* case— which the Government did not seek to rebut—that the articles were chiefly used as objects of collection and display and not as playthings for the amusement of children.

11. More specifically, *Louis Wolf* covered rubber swimming animals which were as-

■ We hold in summary that plaintiffs have failed to prove by a preponderance of evidence that the articles in question are not chiefly used by "children" and the presumption of correctness attending the collector's classification has, therefore, not been overcome. Since the articles are thus enumerated within the toy paragraph, it becomes unnecessary for us to consider whether or not they are also described, by similitude, under the provisions of paragraph 1537(b).[12] The protest in this case is overruled and judgment will issue accordingly.

WATSON, J., concurs.

sessed for duty as toys under paragraph 1513 and stipulated by the parties to be of a size used by adults. *Kress* involved swimming rings and animal characters in chief value of india rubber.

12. This is so for the twofold reason that (1) articles described or enumerated under paragraph 1513 are dutiable thereunder "whether or not more specifically provided for elsewhere in the Act," and (2) merchandise is not susceptible to classification by similitude where it is directly enumerated within any provision of the act. Cf. Salentine & Company, Inc. v. United States, 46 Cust.Ct. 357, Abstract 65216 (1961).