(C.D. 4105)

DAVIS PRODUCTS, INC., ET AL. *v.* UNITED STATES

(Decided October 26, 1970)

*Stein & Shostak* (*S. Richard Shostak* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Thomas Fernandes* and *Morris Braverman*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: This is a retrial of *Davis Products, Inc., et al.* v. *United States*, 60 Cust. Ct. 68, C.D. 3262, 279 F. Supp. 448 (1968). The merchandise involved here—which is identical in all respects to the merchandise in the first case—consists of certain inflatable vinyl articles representing various water animals (i.e., a swan, a seal, a dolphin and a walrus). As in the first case, it was classified by the government under the provisions of paragraph 1513 of the Tariff Act of 1930, as modified, as toys not specially provided for and assessed duty at the rate of 35 percent. And as in the first case, plaintiffs claim that the merchandise is properly classifiable by similitude to manufactures of rubber under paragraph 1537(b) of the Tariff Act of 1930, as modified, and therefore dutiable at only 12½ percent.

The pertinent statutory provisions read as follows:

Classified under:

Paragraph 1513 of the Tariff Act of 1930, as modified, T.D. 52739:

Toys, not specially provided for:

\*      \*      \*      \*      \*      \*      \*

Other (except \* \* \*) _____ 35% ad val.

The term "toy" is defined in paragraph 1513, as follows:

\* \* \* As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

Claimed under:

Paragraph 1537(b) of the Tariff Act of 1930, as modified, T.D. 53865:

Manufactures of india rubber or gutta-percha, or of which these substances or either of them is the component material of chief value, not specially provided for (except \* \* \*):

\*      \*      \*      \*      \*      \*      \*

Other _____ 12½% ad val.

Paragraph 1559 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954:

(a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; * * *.

There is no dispute that the articles are used principally for purposes of amusement. The question rather—as it was in the prior case—is whether plaintiffs have proven by a preponderance of the evidence that the imported articles are not chiefly used by children—i.e., boys below the age of 14 and girls below the age of 12. On this question, we stated in the first case (60 Cust. Ct. at 72–73):

The testimony concerning observations of actual use of these articles is somewhat conflicting. Plaintiffs' witnesses testified in the main to having seen them ridden by teenagers and adults in swimming pools in southern California. They conceded, in addition, that they had also observed pre-teens using them on occasion by pushing them around in the water. By contrast, three of the defendant's witnesses observed their use on the east coast primarily by the 13-and-under age group in private pools and the wading pool areas of beach clubs and public pools. The manner of use was typically described by them as follows:

Q. How were they using them when you saw them used?—
A. Using them as a float to put their arms around it and keep buoyant in the water or just as a throwing device between two or three children in a pool, passing it from one to the other, or just dunking it, or something like that. [R. 94–95]

The defendant's west coast witness corroborated this type of use based upon observations in his home area—Los Angeles, California.

In essence, the testimony as to use indicates (1) that when these water animals are ridden, the riders are usually teenagers and adults; (2) that pre-teens use them; and (3) that they have water uses other than their capacity to be ridden. The evidence is generally in accord in describing *how* the merchandise is used but is in conflict in identifying *who* the ordinary users are.

The burden of proof in chief use cases ordinarily requires a preponderance of competent evidence representative of an adequate geographical cross section of the nation. *E.g., L. Tobert Co., Inc., American Shipping Co.* v. *United States*, 41 CCPA 161, C.A.D. 544 (1953). Whether such burden is discharged depends, of course, upon the facts in each case. *E.g., United States* v. *F. W. Woolworth Co.*, 23 CCPA 98, T.D. 47765 (1935). The record evidence in this case, directed as it is to areas of design, merchandising, and observed use, has failed to establish facts from which this court

can draw an inference favorable to plaintiffs on the ultimate issue of chief use. At best, we can conclude only that the imports are water articles capable of amusing all ages and have been actually so used.

In such circumstances, we held that plaintiffs had failed to prove by a preponderance of the evidence that the articles in question were not chiefly used by children and hence that the presumption of correctness attendant upon the collector's classification had not been overcome. In an effort to sustain this burden, plaintiffs have incorporated the record in the prior case and augmented it by (1) presenting the testimony of four witnesses and introducing several additional exhibits; and (2) incorporating the record in *S. H. Kress & Co.* v. *United States*, 2 Cust. Ct. 736, Abstract 41517 (1939). *Kress*, it may be pointed out, involved certain inflatable swimming rings and animal characters (including an alligator and a horse) that were classified as toys and claimed by the importer to be dutiable as manufactures of india rubber. The entire record consisted of the testimony of two witnesses on behalf of plaintiff and samples of the importations. The witnesses testified that they had seen the articles used at the beach by adults and children and that the adults using them outnumbered the children. The court held that the evidence thus presented overcame the presumption of correctness, stating (slip op. p. 3) :

> Here we have evidence, meagre it is true, of the chief use of these articles by adults for a useful purpose, also of their use to some extent by children under 12 or 13, to sustain their weight in the water. Of course, in addition to their useful purpose, amusement is coupled with the use of these articles. We think plaintiffs have made out a prima facie case "controverting the presumed facts"; thus "the presumption attaching to the collector's action fails." * * *

> This case was tried in the great City of New York. It seems to the Court therefore that if these articles are chiefly used for the amusement of children the Government could have obtained testimony to that effect.

Against this background, we now consider whether, on the basis of the expanded record in the present case, plaintiffs have established by a preponderance of the evidence that the imported articles in question are not chiefly used by children. And this brings us to the additional evidence presented by plaintiffs in the present case. Plaintiffs' first witness was the designer-importer of the articles in question who was called to supplement testimony he had given in the prior case. He reiterated his testimony given in the earlier trial that the imported articles had been designed for the specific purpose of being ridden in the water by adults and teenagers. However, as pointed out in the

first case, "[t]here is other record evidence * * * tending to contradict that conclusion. First of all, the 1961 catalogue of plaintiff, Davis Products, Inc. [which the witness had helped draw up] * * * depicts and describes these same water animals as 'WATER TOYS WITH PERSONALITY,'" and specifically refers to the swan as "Fun to ride for *child* or adult." 60 Cust. Ct. at 71. [Emphasis supplied.] Seeking to minimize these catalogue statements, the witness asserted at the trial of the present case that when the 1961 catalogue was printed in the latter part of 1960, his company had had no experience in the use or suitability of the imported water animals in the United States. However (he continued), by the latter part of 1961—when Davis Products' *1962* catalogue was printed—the company had a great deal of experience in the use of the imports in issue. As a result of that experience, he said, changes were made in the *1962* catalogue so as to put more emphasis on their use for adults and teenagers "rather than just incorporating them * * * in a large group of toys of all sizes and description." In light of this testimony, it is significant to observe that this 1962 catalogue—which the witness helped prepare—refers to the water animals in question as: "created to appeal to *everyone*"; that it states: "Five Giant size water Animals designed for *all ages*"; and that next to the walrus figure it reads: "Ride him, *wrestle* with him . . . an all around pool animal." [Emphasis supplied.] Finally, the cover of the 1962 catalogue depicts two subteen boys in a pool playing with two of the articles in question, with one of the boys riding a swan. From what has been said, it follows that not only is the witness' testimony—that the imported articles were designed for the specific purpose of being ridden by adults and teenagers—contradicted by the contemporaneous record evidence, the credibility of the testimony itself is open to serious doubt.

Nor does other evidence in the record support the claim that the imported articles were primarily designed to be ridden by teenagers and adults. Thus, at a demonstration conducted by the court at a swimming pool, the selfsame witness who had designed the articles in question was unable to ride the walrus, though he was able to ride the dolphin. Another adult had no success whatever with the two articles he attempted to ride—the walrus and the swan. It may be added that two subteen youngsters—aged 9 and 11—had difficulty in riding any of the four types of water animals. Coupled with this is the incorporated testimony of plaintiffs' witness, a former all-American and professional basketball player, that he, as well as several other friends—who were also athletes—had tremendous difficulty in attempting to ride these animals. In short, the record as a whole establishes that anyone, regardless of age, has difficulty in riding these

animals. Thus the augmented record merely fortifies the following conclusion expressed in the prior case (60 Cust. Ct. at 72):

> From the evidence elicited on this point, we observe merely that the construction and size of the imports permit their use for water riding by teenagers and adults of sufficient dexterity and patience. We are unable to find as an established fact, however, that these articles were solely or primarily designed for such use.

Plaintiffs' designer witness also testified that a child would quickly lose interest in the imported articles because of his inability to do anything with them and that their use by children as a float or passing it from one to another or dunking it would be merely a fugitive and very limited use. Not only is this testimony unconvincing, it is contrary to the weight of the evidence. Thus, four of defendant's witnesses in the incorporated case testified that they had seen subteen children on both the east and west coast using the articles in just this way. 60 Cust. Ct. at 72–73. Indeed, even plaintiffs' witnesses conceded at the first trial that they had observed pre-teens using them on occasion by pushing them around in the water. Id. at 72. And beyond this we note that in the present case both of the subteen youngsters who had participated in the demonstration at the swimming pool testified that they enjoyed playing with the imports in the water—this notwithstanding they were unable to ride them.

Nor does the record in *S. H. Kress & Co.* v. *United States, supra,* 2 Cust. Ct. 736—which has been incorporated in the present case—advance plaintiffs' position. In *Kress,* as we have seen, the court held for plaintiff because it had made out a prima facie case and the defendant had failed to come forward with any evidence whatever. Here, by contrast, plaintiffs have failed to make out even a prima facie case. But assuming they had, it was overcome by the testimony defendant presented in rebuttal.

We come now to protest 62/9451 in which it is claimed that certain inflatable swim rings were improperly classified as toys and are properly classifiable by similitude to manufactures of rubber under paragraph 1537(b) of the Tariff Act of 1930, as modified. In support of the claim, plaintiffs point to the entry papers in three other protests consolidated here for trial, which entry papers indicate that similar swim rings were entered, classified and liquidated under paragraph 1537(b). Plaintiffs also point out that another entry of swim rings was reliquidated under paragraph 1537(b) pursuant to this court's decision in *Davis Products, Inc.* v. *United States,* 51 Cust. Ct. 159, Abstract 67862 (1963). However, there is no showing whatever that these assessments by customs under paragraph 1537(b) were based on an established and uniform practice. See 19 U.S.C. § 1315(d). Further, the 1963 decision in this *Davis Products* case was based on

an oral stipulation of the parties. Finally, no testimony has been presented by plaintiffs with respect to the uses of the swim rings in question. In these circumstances, the presumption of correctness attendant upon their classification by the government as toys has not been overcome.

The protests are overruled and judgment will be entered to that effect.