(C.D. 4717)

L. B. WATSON Co., a/c MURPHY REIR, INC. *v.* UNITED STATES

Court No. 67/9660–87472

(Decided October 18, 1977)

*Stein, Shostak, Shostak & O'Hara, Inc.* (*S. Richard Shostak* of counsel) for the plaintiff.

*Barbara Allen Babcock,* Assistant Attorney General (*Saul Davis,* trial attorney), for the defendent.

MALETZ, Judge: This case involves the dutiable status of inflatable vinyl reindeer articles described on the invoices as VNC 200

(Randy Reindeer) and of inflatable vinyl Santa Claus figures described on the invoices as VNC 301 (Standing Santa 24″). The articles which were imported from Japan and entered in September 1965 at the port of Los Angeles-Long Beach for the account of Murphy Reir, Inc. of Tower Lake, Illinois were classified by the district director of customs under item 737.40 of the Tariff Schedules of the United States (TSUS) as other toy figures of animate objects (except dolls), not having a spring mechanism, not stuffed, and not wholly or almost wholly of metal, and assessed with duty at the rate of 35 percent ad valorem.

Plaintiff claims that the importations are properly classifiable under item 772.97, TSUS, as other Christmas ornaments of rubber or plastics and thus dutiable at the rate of 17 percent ad valorem.

The pertinent provisions of TSUS are as follows:

Classified under:

Schedule 7, Part 5, Subpart E:

Toy figures of animate objects (except dolls):
    Not having a spring mechanism:
          * * * * * * *
    Not stuffed:

| | | |
|---|---|---|
| 737.35 | Wholly or almost wholly of metal * * * | |
| 737.40 | Other_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 35% ad val. |

Claimed under:

Schedule 7, Part 12, Subpart C:

Nativity scenes; Christmas ornaments; crucifixes; miniature altars, shrines, and holy-water fonts; religious figurines and statuettes; other religious articles; all the foregoing (not including any article provided for in part 6A of this schedule) of rubber or plastics:

| | | |
|---|---|---|
| 772.95 | Christmas tree ornaments_ _ _ _ _ _ _ _ | * * * |
| 772.97 | Other_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 17% ad val. |

The present record consists of the testimony in April 1976 of Sidney L. Friedlander, together with the records of *Davis Products, Inc., Frank M. Chichester* v. *United States*, 59 Cust. Ct. 226, C.D. 3127 (1967) and *New York Merchandise Co., Inc.* v. *United States*, 66 Cust. Ct. 69, C.D. 4169 (1971) which were incorporated by orders of the court dated April 15, 1976.

In support of its claim, plaintiff contends that the merchandise here in issue is similar in all material respects to the merchandise in issue in the incorporated *Davis Products* case. In that case, certain

inflatable vinyl reindeer and Santa Claus figures were classified by the government under paragraph 1513 of the Tariff Act of 1930, as modified, as other toys not specially provided for, and assessed with duty at the rate of 35 percent. The court held, however, that as claimed by plaintiffs, the importations were primarily marketed, sold and used as articles of Christmas display decorations and not as toys, and were therefore properly classifiable by similitude to manufactures of rubber under paragraph 1537(b) of the 1930 Tariff Act, as modified, and thus dutiable at the rate of 12½ percent.[1]

Against this background, the major issue here is whether or not the imported articles involved in the present case are similar in all material respects to the inflatable vinyl reindeer and Santa Claus figures involved in the *Davis Products* case. As to this, it is to be noted that no sample of any of the importations here in question has been offered by plaintiff to support its claim. And in this connection, while it is not necessary for a plaintiff to offer a sample of the imported merchandise, it must, however, present adequate evidence to establish the nature and essential characteristics of the importation. *New York Merchandise Co., Inc.* v. *United States, supra*, 66 Cust. Ct. 69; *W.T. Grant Co.* v. *United States*, 74 Cust. Ct. 3, C.D. 4579 (1975).[2]

With these considerations in mind, plaintiff insists that the testimony of Mr. Friedlander—who was the sole witness in the present case—not only informs the court about the nature and essential characteristics of the imported vinyl reindeer and Santa Claus figures, it establishes that such figures are similar in all material respects to the vinyl reindeer and Santa Claus figures that were involved in *Davis Products*.

It is in this setting that we now consider the testimony of Mr. Friedlander who, as in the present case, was the sole witness in the incorporated *Davis Products* case.[3] In the present case, Mr. Friedlander testified to the following effect: In the latter part of 1964, he left his position as executive vice president of Davis Products, and after a two-month hiatus became vice president in charge of the purchase

---

[1] The Tariff Act of 1930—unlike the TSUS—did not have specific provisions for Christmas ornaments.

[2] Plaintiff on two prior occasions moved for summary judgment in the present case on the basis that affidavits of Mr. Friedlander established the necessary similarity. Both motions were denied, however, on the ground that the affidavits failed to inform the court about the nature and essential characteristics of the imported merchandise. *L. B. Watson Co.*, a/c *Murphy Reir, Inc.* v. *United States*, 74 Cust. Ct. 193, C.R.D. 75-2 (1975); *L. B. Watson Co.*, a/c *Murphy Reir, Inc.* v. *United States*, 75 Cust. Ct. 185, C.R.D. 75-5 (1975).

[3] Mr. Friedlander was also one of four witnesses who testified in the incorporated *New York Merchandise Co.* case, *supra*, 66 Cust. Ct. 69. In that case certain vinyl figures were likewise claimed to be similar in all material respects to the vinyl figures involved in *Davis Products*. The court overruled the importer's claim that the figures were properly classifiable under item 772.97 as other Christmas ornaments and not as toys, on the ground that the importer neither offered a sample of the imported articles in evidence nor presented adequate testimony in lieu thereof which would inform the court about characteristics of the article which were important in determining whether or not they were toys. In the absence of such evidence, the court remained uninformed about crucial factors in the case.

and sale of inflatable articles for Murphy Reir which was engaged in the premium business, i.e., selling merchandise to companies that in turn either gave the merchandise away free or sold it at low prices to their customers. All the imported figures were sold by Murphy Reir to the Murphy Oil Company of Chattanooga, Tennessee.

Mr. Friedlander testified that for a period of two to three years prior to the present importations in 1965, vinyl inflatables were sold to the Murphy Oil Company by Davis Products, Inc., and that Murphy Reir took over the account after Davis Products went out of business. As vice president of Murphy Reir, Friedlander stated that he went to the Asahi Chemical Company in Japan and arranged for Asahi to supply Murphy Reir with the same inflatable vinyl reindeer and Santa Claus figures it had previously manufactured for Davis Products. Asahi was told by Friedlander to produce the figures exactly the same way it had produced them for Davis Products.

Mr. Friedlander stated that the Murphy Reir VNC 301 was a 24-inch "Standing Santa" inflatable figure which was the same in all material respects as the Davis Products N902 (15-inch Santa Claus figure) and the Davis Products N910 (26-inch Santa Claus figure), except for size.[4] The witness further stated that the imported Murphy Reir VNC 200 ("Randy Reindeer") was the same in all material respects as the Davis Products N904 ("Randy Reindeer"), except for color.[5]

Mr. Friedlander went on to state that the imported merchandise was identical to the merchandise in the *Davis Products* case in the following respects: (1) It was made from the same type of 10-gauge heavy-duty vinyl material with special low-temperature formulation, purchased from the same source, Mitsubishi Monsanto; (2) the same heat-sealing dies and silk screens were used in its production; (3) it had identical fastening tabs; and (4) as in the case of the Davis Products importations, it did not have whistles or other noisemakers. Continuing, Mr. Friedlander testified that the use of the present importations was the same as the use of the importations imported in the *Davis Products* case; that such use did not change from 1961 to 1965; and that the importations were designed for specific use as Christman decorations as evidenced by the heavy low-temperature vinyl utilized, the realistic rather than cartoon features employed in their design and the presence of fastening tabs so they could be secured as a display.

---

[4] With regard to the size of these inflatables, Mr. Friedlander indicated that the VNC 301 was about 15 or 16 inches tall when inflated while it was 23 or 24 inches tall deflated. According to his testimony, when a figure is inflated its overall volume increases, thus diminishing its length.

[5] Thus, the witness Friedlander recalled that the VNC 200 was sold in white, brown and metallic brown, while the record in the *Davis Products* case shows that the N904 was sold only in white and brown.

Defendant maintains, however, that Friedlander's testimony on cross-examination damaged his entire credibility. To support this contention, defendant notes that on cross-examination Mr. Friedlander could not (i) recall the Murphy Reir VNC 300, 201, 302, 400, 401, 402 and 100 series; [6] (ii) recall the VNC number for the Murphy Reir 36-inch inflatable reindeer; (iii) recall what the Davis Products N908, N914, N915 or N916 were; (iv) recall if the N916 was a different animal character; (v) nor recall whether the N908, N915, or N916 were in the Davis Products Christmas line despite the fact that in the record in the incorporated *Davis Products* case, Friedlander indicated when he testified in 1965 that the N915 and N916 were reindeer.

Defendant further notes that Friedlander testified in the present case that all color variations of the same article had the same "VNC" number for Murphy Reir products and the same "N" number for Davis Products. In contrast to this testimony, defendant observes that when Mr. Friedlander testified in 1965 in the *Davis Products* case he stated that the Davis Products N916 reindeer was identical to the N915, except that the N916 was in assorted white and brown colors and the N915 was in gold and that the only reason the N915 and N916 reindeer were given different item numbers was because they came in different colors.

As an additional factor assertedly undermining Friedlander's testimony, defendant further observes that at the trial of the present action Friedlander testified that his company (Murphy Reir) used 10-mm gauge vinyl for the imported figures and never used 8 to 8½-mm gauge plastics in the manufacture of its products. Defendant adds that in the incorporated *New York Merchandise Co.* case Friedlander testified in May 1969 that the general industry specifications for inflatable Christmas articles were 8 to 8½-mm gauge regardless of size. (It should be noted Friedlander also testified in that case that in some of the very large inflatable Davis Products imported, which were specially designed for rugged outdoor use, it used heavier gauge material.) Continuing, defendant quotes a portion of Friedlander's testimony in the incorporated *New York Merchandise Co.* case to the effect that the smaller size figures imported by Davis Products were 8 to 8½-mm gauge. From all this, defendant draws the apparent conclusion that there is an inconsistency between Mr. Friedlander's testimony that while it was an industry-wide practice to use 8 to 8½-mm gauge, the Murphy Reir imports were 10-mm gauge. The fact is, however, that Mr. Friedlander's testimony in the incorporated cases made it clear that it was commonplace for 10-mm gauge vinyl to be used for rugged outdoor use. Indeed, as this court stated in the

---

[6] There is nothing in the record of the present case—catalogue or otherwise—to indicate what, if any, items these VNC numbers respresented.

*New York Merchandise Co.* case, *supra*, 66 Cust. Ct. at 72: "In the *Davis* [*Products*] case, Friedlander testified that the imported vinyl Santa Claus figures there involved were introduced in the market to replace Christmas decorations composed of cardboard, wood, Masonite and other hardboard products; *that the purpose of manufacturing the imported figures was to achieve a display article for outdoor as well as indoor use; that to this end, the vinyl used in the figures was 10 gauge*— which, he said, was a heavier gauge than the 8 gauge usually found in the company's normal toy items * * *." (Emphasis added.)

Beyond that, defendant refers to Friedlander's concession on cross-examination at the present trial in 1976 that he did not remember the Davis Products line as clearly as he did in 1965. It should also be pointed out though that on additional cross-examination Friedlander testified that he did, however, recollect the *use* of the Davis Products and Murphy Reir importations since "things of the nature of how products are used are things one retains in their memory for a long, long time." (R. 52)

Notwithstanding defendant's challenge, the court finds that Mr. Friedlander was a credible witness and that his testimony in the present case establishes that the imported articles involved here are similar in all material respects to the inflatable vinyl reindeer and Santa Claus figures involved in the *Davis Products* case. What is more, Mr. Friedlander's testimony is, in the court's view, adequate to establish the nature and essential characteristics of the importations.

It is quite true that Mr. Friedlander was not able to recall style numbers and other details concerning items not in controversy. But in view of a lapse of some eleven years since Friedlander sold the merchandise, it is natural that his memory regarding such details was not perfect. And it is equally natural that his memory with regard to the imported reindeer and Santas would be more accurate for the reason that he had focused in on these specific items when he testified about them in 1965 in the *Davis Products* case.

In short, the record establishes a credible state of facts wherein the Murphy Reir company found a need to supply the Murphy Oil Company with the same Christmas reindeer and Santa Claus figures Murphy Oil had previously obtained from Davis Products. It was in these circumstances that Murphy Reir employed Friedlander, who was formerly the vice president of Davis Products in charge of inflatable goods, to handle the Murphy Oil requirements for the same Christmas inflatable figures the latter had previously purchased from Davis Products. In accordance with his new responsibilities, the court finds credible Mr. Friedlander's testimony that he thereupon went to Asahi—the manufacturer in Japan which had produced the inflatable figures for Davis Products—and ordered for Murphy Reir the same

inflatable figures made from the same heat-sealing dies and the same silk screens and which had the same fastening tabs as the Davis Products figures.

Defendant finally argues that even if plaintiff has proven that the imported merchandise was the same as the merchandise involved in *Davis Products*, plaintiff failed to prove that the class or kind of merchandise to which the imported merchandise belongs was chiefly used as Christmas decorations throughout the United States during 1965. See TSUS General Interpretative Rule 10(e)(i).[7] In this context—and leaving aside the question of *stare decisis*—it is instructive to recall that Mr. Friedlander—who was the sole witness in the incorporated *Davis Products* case—testified in that case in 1965 that the chief use of the involved class of inflatable figures in representative geographical centers of the country was as outdoor Christmas decorations and not as toys. On the basis of Friedlander's uncontradicted testimony, the court concluded that plaintiff had made a *prima facie* showing that the "individual vinyl Santa and Reindeer figures * * * are primarily * * * used as articles of Christmas display and not as toys." 59 Cust. Ct. at 231. In reaching this conclusion, the court commented (59 Cust. Ct. at 229):

> A toy being an article chiefly used for the amusement of children, as defined in paragraph 1513, it was plaintiffs' burden of proof to show, on the basis of an adequate geographical section of the country, another and different prevailing use for the imported merchandise. *L. Tobert Co., Inc., et al.* v. *United States*, 41 CCPA 161, C.A.D. 544. To establish such proof, it has been recognized that the uncontradicted testimony of a single, competent, and credible witness may be sufficient. *Catton, Neill & Co. (Ltd.)* v. *United States*, 11 Ct. Cust. Appls. 278, T.D. 39084; *J. E. Bernard & Company, Inc.* v. *United States*, 27 Cust. Ct. 291, Abstract 55793.
>
> In the instant case, testimony for the plaintiffs was given by a man [Sidney L. Friedlander] who demonstrated an intimate knowledge on every phase of the handling of this merchandise—design, production, importation, and sale. We quite agree with the statement in defendant's brief that he is "an interested witness," interested in the sense that he was in a position to know, and it was logical for him to know, the characteristics and uses of the articles at bar. As such, his testimony is of high probative value. * * *

In the present case, the same Mr. Friedlander (as previously indicated) testified without contradiction that the use of the present

---

[7] Even before the enactment of TSUS, the test of chief use under the Tariff Act of 1930 was the same, i.e., the chief use of that class or kind of article at the time of importation throughout the United States. See e.g., Sturm, *A Manual Of Customs Law* (1974) p. 222.

importations—which were entered in 1965, the same year he testified in the *Davis Products* case—was the same as the use of the figures imported in the *Davis Products* case; that such use did not change from 1961 to 1965; and that the importations were designed for specific use as Christmas decorations as evidenced by the heavy low-temperature vinyl utilized, the realistic rather than cartoon features employed in their design and the presence of fastening tabs so they could be secured as a display. Considering the thrust of this testimony, the above-quoted comments of this court in *Davis Products* are equally applicable here as to chief use and the court must conclude, as it did in *Davis Products*, that the individual vinyl Santa and reindeer figures were chiefly or primarily used as articles of Christmas display or decoration and not as toys.

For the reasons stated, it is held that the imported inflatable reindeer and Santa Claus figures are properly classifiable under item 772.97 as other Christmas ornaments of rubber or plastics, dutiable at the rate of 17 percent ad valorem. Plaintiff's claim is therefore sustained and judgment will be entered accordingly.